SYKES *et al.* v. FIRST NATIONAL BANK.

1. An assignment was made under the following clause in a contract: "The said J. B. Pattee, the party of the first part, agrees and obligates himself to set apart from the payments or fund to be received by him from the Territory of Dakota, by proper and legal assignment and order upon the board of trustees of the Dakota Hospital for the Insane, or other proper authority or body, the sum of $7,088, to be applied from time to time towards the payment of said materials and labor, which said assignment and order shall be duly accepted by said body or authority. It is further expressly understood and agreed that the performance and the payments hereunder are conditioned upon the execution of the bond for the faithful performance of this contract by the second party, (Sykes & Co.,) and the execution of the assignment and order by the first party, (Pattee,) and the acceptance thereof hereinbefore referred to," *Held*, that such assignment was absolute, and not

conditioned, and that the assignee, having performed the contract, was entitled to recover the amount specified in the assignment from the party into whose possession the fund came with the knowledge of the assignment, though the assignment was not accepted by the body specified in the contract. *Held further*, that it was competent for the assignees to waive the acceptance, and still rely upon the assignment.

2. It was not alleged in plaintiffs' complaint or in defendant's answer that the original contract between the assignor and assignees had been changed or modified. *Held*, that evidence of such change or modification was inadmissible under the pleadings, and that evidence admitted, competent for the purpose of proving notice to defendant of the assignment, was not available to defendant as also tending to show a change or modification of the contract.

3. The assignment, though it could not have been enforced by action against the territory, was valid as between the assignor and assignees, and an action can be maintained by the assignees upon it against the defendant, into whose possession the fund came with full knowledge of the assignment; said defendant showing no superior claim to the fund.

4. The assignee of a part of a designated and specific fund, whether due or to become due, is in equity the owner of the fund, and may enforce in equity its payment by one who has possession of the specific fund, with notice of the assignment, who has no superior claim to it.

5. The distinction between legal assignments that may be enforced in an action at law, and an equitable assignment that can only be enforced in an equitable action, seems to be this: That an assignment, to be valid as a legal assignment that can be enforced in an action at law, must be of a debt or fund in existence at the time, and of the whole thereof, or of a part of a debt or fund then in existence, and the assignment or order transferring the fund must be accepted by the debtor or person holding the fund. But in an equitable assignment of a specific debt or fund, or a part of a specific debt or fund, it is not an essential element that the debt should have been earned or the fund be *in esse* at the time of the assignment or order transferring the debt or fund, or that the assignment or order transferring the specific debt or fund, or a part thereof, should be accepted by the debtor or holder of the specific fund.

6. Under the system of pleading in this state, "the distinction between actions at law and suits in equity, and the forms of all such actions and suits, heretofore existing, are abolished." *Held*, that, while the distinctions in the forms of actions are abolished, law and equity, as two distinct systems, still remain, and that the facts stated in the complaint, and the subject-matter of the action, must determine whether the action is one at law or in equity. *Held*, in this case, the facts stated and the subject-matter show conclusively that it is an action in equity, and not at law.

7. The objection that the assignor was not made a party should have been taken by demurrer, or motion under Section 4885, Comp. Laws, and a

failure to demur or move the court to bring in additional party or parties is a waiver of the defect of parties, if such existed.

8. National banks are fully authorized to receive deposits under the provisions of Section 5136, Rev. St. U. S. The power to receive deposits necessarily carries with it the power to contract as to the parties to whom the deposit shall be repaid.

.9. The assignor received from the board of trustees of the Hospital for the Insane the vouchers issued for the "steam heating fund," and deposited them with the defendant bank, which collected the amount due thereon from the territorial treasurer with notice of the assignment. *Held*, that the fund to the amount assigned belonged to the assignees, and that the vouchers, while in the hands of the assignor, were held by him as trustee to the assignees, and that such receipt of the vouchers by the assignor, and deposit by him with the defendant bank, constituted no defense to the action by the assignees, and all evidence relating thereto was properly excluded by the court. *Held further*, that evidence that the assignor directed the defendant bank not to pay the assignees the amount assigned unless a bill for $261.95 should be deducted was immaterial and properly excluded. The assignment was of a specific fund, which defendant received with notice of the assignment, and its duty was to pay it over to the equitable owners.

(Syllabus by the Court. Opinion filed Oct. 20, 1891.)

Appeal from circuit court, Lincoln county. Hon. FRANK R. AIKENS, Judge.

Action against the defendant to enforce the payment of money. A verdict was directed for plaintiffs and judgment thereupon entered. Defendant appeals. Affirmed.

*R. B. Tripp (Bartlett Tripp of counsel)* for appellant.

The plaintiffs could predicate no liability on the assignment, because it did not become operative, they never acted on the faith of it, in fact, they accepted another arrangement to effect its object,—pay for the work, and this arrangement was so antagonistic to the first, the two could not stand together. The rule in such case is that the latter arrangement, or contract, supersedes the former as to all matters with reference to which it treats. Patmore v. Colburn, 1 Ex. 65; Thornhill v. Neats, 98 C. L. 831; Paul v. Meservy, 58 Me. 419; Rollins v. Marsh, 128 Mass. 119; Stow v. Russell, 36 Ill. 30; Parmly v. Buckley, 103 Id. 120; Kimmerlee v. Hass, 19 N. W. 26; Truckee v. Wood, 14 Nev. 293; Chrisman v. Hodges, 75 Mo. 413; Rowan v. Sharp's R. M. Co., 33 Conn. 23; Humiston

v. Wood, 24 U. S. 19; Lawall v. Rader, 24 Pa. St. 283; Majority v. Shipman, 2 Mackey, 334; Cayner v. Linde, 10 Ind. 284.

Even in the absence of proof of the abandonment the assignment would not have availed, because its effectiveness depended upon acceptance, and this did not occur. It never therefore became operative for any purpose. § 3429, Comp. Laws; Wallis v. Littell, 103 C. L. 369; Ware v. Allan, 128 U. S. 590.

Pattee not having earned the money or fund at the time of the assignment it could have no legal effect, for the want of an object on which to operate. Mitchell v. Winslow, 2 Story, 630; Hassie v. G. I. W. U. C., 35 Cal. 378; Kendall v. U. S., 7 Wall. 116.

The assignment being partial and having been rejected it was wholly without effect. Partial assignments are invalid. Manderville v. Walsh, 5 Wheat. 277; Thomas v. R. I. G. & S. & Co., 54 Cal. 578; Burnett v. Crandall, 63 Mo. 410; Beardslee v. Morgner, 73 Id. 22; Bank v. Noonan, 14 Mo. App. 243; Lindsay v. Price, 33 Tex. 280; Geist's Appeal, 104 Pa. St. 351; Appeals of City, 86 Id. 179; Chapman v. Shattuck, 3 Gill. 52; Moore v. Gravelot, 3 Ill. App. 442; Carter v. Nichols, 58 Vt. 553; Thayer v. Havener, 6 Me. 212.

The officers of the bank had no power to bind it, as it was a national bank and vested with special powers and their acts were beyond the scope of their authority. §§ 5133, 5136, 5208, Rev. St. U. S.; Bank v. Pierson, 24 Minn. 140; Bank v. Baldwin, 23 Id. 203; Morse Bank, 177; Norton v. Bank, 61 N. H. 589; Seligman v. Bank, 3 Hughes, 647; Bank v. Troy, 1 Doug. 457; Bank v. Hoch, 89 Pa. St. 324; Dorsey v. Abrams, 85 Id. 299; Weckler v. Bank, 42 Md. 581; Horrigan v. Bank, 10 Chicago L. N. 112; Thompson v. McKee, 5 Dak. 172; Mapes v. Bank, 80 Pa. St. 163; Watson v. Bennett, 12 Barb. 196; Cooke v. Bank, 52 N. Y. 115.

*L. B. French* for respondent.

It is of no consequence whether or not the assignment in question was binding upon the Territory of Dakota, as it was binding between the parties. Code v. Carleton, 25 N. W. 353.

It prevented further control of the fund by the debtor. Clark v. Gillespie, 8 S. W. 121; Campbell v. Hildebrandt, 3 S. W. 243; Kirtland v. Moore, 2 At. 269. Further, the contract and assignment were accepted; work done and money sent to the defendant bank for plaintiffs by consent of all the parties interested.

Under statutes which permit the blending of both legal and equitable remedies in one form of action, as is the case in this state, the assignment of a part of an entire claim is valid and will be enforced. Grain v. Aldrich, 38 Cal. 514; Gradwold v. Harris, 29 Cal. 151; Parker v. City of Syracuse, 31 N. Y. 376; Brill v. Tuttle, 81 Id. 454; Risley v. Bank, 83 Id. 318; Daniel v. Meishard, 53 Ga. 359; Bank v. McLoon, 73 Me. 498; Field v. Major, 6 N. Y. 179.

CORSON, J. This is an action brought by plaintiffs to enforce the payment of the sum of $7,088 alleged to have been assigned to plaintiffs by one Pattee, which had come into the possession of the defendant with notice of the assignment. The action was tried to a jury, and a verdict and judgment directed by the court in favor of plaintiffs. Motion for a new trial was made and overruled, and defendant appeals to this court from the judgment and order. The plaintiffs in their complaint allege that in April, 1888, a contract was entered into between one Pattee and the board of trustees of the Dakota Hospital for the Insane, by which said Pattee agreed to construct two wings to said hospital, including a plant for steam heating, for the sum of $70.000; that subsequently said Pattee entered into a sub-contract with those plaintiffs to construct said steam heating plant for said two wings for the sum of $7,088; that said Pattee, in accordance with the terms of said subcontract, and at the time of making the same, duly assigned to the plaintiffs by an instrument in writing the sum of $7,088 of the money to become due from the territory on his contract with the board, payable out of the steam heating fund; that the plaintiffs fully performed their said subcontract; that the board of trustees issued to said Pattee vouchers for the sum of $10,000 on said steam heating fund, which

vouchers were transferred to the defendant by said Pattee, and warrants obtained thereon from the territorial auditor, which were paid to defendant by the territorial treasurer, and that said defendant received said fund with notice that said sum of $7,088 of said fund had been duly assigned to the plaintiffs by said Pattee; that, upon the receipt of said fund by said defendant, it promised the plaintiffs to pay to them the amount so assigned to them; and that same had been demanded of said defendant, and payment thereof refused. The answer admits the copartnership of plaintiffs, the making of the contract between the said Pattee and the board of trustees, and the incorporation of the defendant, and denies the other allegations of the complaint. The answer then alleges that in August, 1888, and for a long time thereafter, said Pattee was one of the depositors of said defendant bank, and that his deposits consisted chiefly of vouchers issued to him by the board of trustees of the Dakota Hospital for the Insane on the contract between said board and said Pattee, set out in the complaint; that said vouchers were forwarded to the territorial auditor by the defendant, and he issued his warrants thereon, which were transferred by indorsement by the defendant under and by virtue of a power of attorney from Pattee, and collected by the defendant of the territorial treasurer, and the money placed to the credit of Pattee in the said defendant bank; that the amounts so placed to the credit of said Pattee were and could be drawn out by said Pattee on checks in the ordinary course of business; that on or about January 7, 1889, the said Pattee transmitted to the defendant vouchers on said steam heating fund for $8,029, which were collected in the manner above stated on account of said Pattee; that on or about the same date said Pattee transmitted to the defendant a check in favor of said plaintiffs for the sum of $7,088, with a bill for $261.95 against said plaintiffs to be deducted therefrom, said check to be paid on condition of the allowance and deduction of said bill; that defendant communicated the fact of the drawing of said check by Pattee, and the bill for $261.95 to be deducted therefrom, to the plaintiffs; that plaintiffs refused to allow said bill, or receive the amount

of said check less said bill, which fact defendant communicated to said Pattee, who thereupon directed the defendant not to pay said plaintiffs anything on account of their said contract, and revoked defendant's authority to honor said check, which said revocation remains in full force and effect.

The facts, as proven and admitted on the trial, briefly stated, are as follows: In the spring of 1888 the board of trustees of the Dakota Hospital for the Insane, situated at Yankton, S. D., entered into a contract with one J. B. Pattee to construct two wings to the Dakota Hospital for the Insane, including heating apparatus for heating the same. In July of that year said Pattee entered into a written contract with the plaintiffs, Sykes & Co., to construct in said wings to said hospital steam heating apparatus, in which subcontract between Pattee and Sykes & Co. are the following clauses: "The said J.B. Pattee, the party of the first part, agrees and obligates himself to set apart from the payments or fund to be received by him from the Territory of Dakota, by proper and legal assignment and order upon the board of trustees of the Dakota Hospital for the Insane, or other proper authority or body, the sum of $7,088, to be applied from time to time towards the payment of said materials and labor, which said assignment and order shall be duly accepted by said body or authority. It is further expressly understood and agreed that the performance and the payments hereunder are conditioned upon the execution of the bond for the faithful performance of this contract by the second party, (Sykes & Co.,) and the execution of the assignment and order by the first party, (Pattee,) and the acceptance thereof hereinabove referred to." In pursuance of the terms of said contract above specified, said Pattee, on July 20, 1888, made the following order and assignment: "To the Board of Trustees of the Dakota Hospital for the Insane—Gentlemen: I, J. B. Pattee, of Yankton, D. T., contractor, for a valuable consideration, assign, transfer, and set over to E. T. Sykes and D. D. Brooks, as partners doing business as E. T. Sykes & Co., of Minneapolis, Minn., all of my right, title, and interest in and to the sum of $7,088, the same being part of the fund out of

which I, as said contractor, am to be paid for material and labor furnished and performed thereon, said assignment of that portion of said fund to be paid to E. T. Sykes & Co. in the manner and upon the terms and conditions set forth in a certain memorandum of agreement dated July 20th, 1888, signed by said J. B. Pattee and E. T. Sykes and D. D. Brooks as such partners, a copy of which is hereto attached for the guidance of said trustees. And I do hereby respectfully request and order you, as such trustees, to make payment and issue the proper orders for the payment of said sum according to the terms and conditions of said agreement and this assignment, and charge to me said sum when paid, to be deducted from the amount due and to become due upon my said contract with the said Territory of Dakota. J. B. PATTEE." This order and assignment was presented to the board of trustees for the hospital, but the board declined to accept the same. Thereupon, on August 15th, Mr. Pattee wrote to Sykes & Co. the following letter: "E. T. Sykes—Dear Sir: * * * I presented the assignment to the board, but, while they thought well of it, they found legal objections, which I have not time to explain. I will fix your matter satisfactorily through the First National Bank of Canton. Mr. Gale, the president of the bank, is the president of the board of trustees. Yours, in haste, J. B. PATTEE." And on the following day, August 16th, J. H. Gale, then cashier of the defendant bank, wrote to Sykes & Co. the following letter: "Canton, Dakota, August 16, 1888. E. T. Sykes & Co., Minneapolis, Minn.—Gentlemen: Mr. J. B. Pattee presented the paper you sent him to the board, and requested and urged them to sign it, but they could not, as that goes beyond their jurisdiction, so Mr. Pattee requested me to write you and explain the matter fully. All vouchers are made out by the board to the order of Mr. Pattee, and the warrant is also drawn to his order, but I have a power of attorney to indorse his drafts or warrants, and the president of this bank is the president of the board of trustees of the Yankton Asylum, and all vouchers are endorsed by Mr. Pattee, and turned over to this bank by the president of the board, and we get the war-

rant from the auditor. Now, you see everything is handled in such a way that you are perfectly safe, and we will remit to you just as fast as we get the warrants advanced on this fund, viz., 'steam heating.' Trusting this will be satisfactory, and that you will rest easy, I remain, very respectfully, J. H. GALE." And on August 18th Sykes & Co. wrote in reply as follows: "Minneapolis, Minn., August 18, 1888. J. H. Gale, Esq., Yankton, Dak.—Dear Sir: Your Explanation and agreement in the matter between Mr. Pattee and ourselves is satisfactory. We have given instructions to have bond and contract delivered to Mr. Pattee. In the meantime we have been making contracts, and don't expect there will be any delay by us in the completion of the buildings. The boilers are nearly ready. Yours, respectfully, E. T. SYKES & Co." E. T. Sykes, one of the firm of Sykes & Co., testified on the trial that, "upon being informed that the assignment was not accepted by the board, I stopped any further action in the matter. * * * Before this [probably referring to the Gale letter] I had informed Mr. Pattee we would require security before going on with the contract. I so wrote him, and he kept writing me because I did not go on any further in the work. * * * The contract referred to in this letter (letter to Gale of August 18th) was the contract for the work, and the bond was to secure Mr. Pattee for our completing the work according to specifications. The instruction to turn these instruments over to Mr. Pattee was sent to our attorneys at Yankton, and they turned the papers over to Mr. Pattee." The following telegram was received at Minneapolis, Minn., January 22, 1889, dated at Yankton, D. T., 22d: "To E. T. Sykes & Co.: Estimate allowed; will take about ten days to receive warrant from territorial auditor; will then remit you in full. F. A. GALE, Prest. First National Bank, Canton, D. T." It was admitted that F. A. Gale was president of the defendant bank at that time. It was further admitted that Sykes & Co. performed their contract according to plans and specifications, and that the work was accepted by the board. On cross examination a letter from Sykes & Co. to F. A. Gale, bearing date February 5, 1889, was introduced in

evidence, in which they urge Mr. Gale to hasten remittances, to which Mr. Gale made the following reply: "Canton, Dak., 2, 12, 1889. E. T. Sykes & Co., Minneapolis, Minn.—Dear Sirs: Yours of the 5th received in my absence, and contents noted. Inclosed please find bill for $261.95, which Mr. Pattee instructs us to deduct from your bill. Send receipt in full of all demands against Mr. Pattee, and I think, on receipt of same, we will be ready to remit. Are sorry for the delay, but the territory can't be hurried. Very respectfully, F. A. GALE." Sykes & Co. refused to allow the bill referred to in Mr. Gale's letter, and so notified him by letter of February 15th. On February 18th Mr. Gale wrote Sykes & Co. further in regard to the bill, and declined to pay unless the bill was deducted. Other letters were also introduced and read on the cross examination of Mr. Sykes, which we do not deem necessary to give here. Evidence to sustain the allegations of its answer was offered on the part of the defendant bank, which upon objection by plaintiff's counsel was nearly all excluded. We do not deem it necessary to set it out, as its character is disclosed in the answer, but some parts will be referred to in the course of this opinion. Numerous errors are assigned in the record; but, as counsel for appellant have stated quite fully in their briefs the points upon which they rely for a reversal, it will not be necessary to set them out here.

1. The first point made by counsel for defendant is that the assignment of the $7,088 made by Pattee to the plaintiffs never became operative, as it was made upon the condition of its acceptance by the board of trustees, as shown by the contract between Pattee and the plaintiffs, and hence the plaintiffs could predicate no liability upon it. This proposition is, we think, untenable, because based upon an erroneous theory, that the assignment itself was conditional. An examination of the clauses in the subcontract between Pattee and the plaintiffs shows, we think, that the assignment was absolute, but that unless accepted by the board the plaintiffs were not bound to go on with their contract; its acceptance being a condition precedent to any binding obligation on the part of the plaintiffs.

Referring to the clauses of the contract given in the statement of facts, it will be noticed that Pattee obligates himself "to set apart from the payment or fund to be received by him from the Territory of Dakota, by proper and legal assignment and order upon the body of trustees * * * the sum of $7,088, to be applied from time to time towards the payment of said materials and labor, which said assignment and order shall be duly accepted by said body or authority." And it was further agreed "that performance and the payments hereunder are conditioned upon, etc., "* * * and the execution of the assignment and order by the first party, (Pattee,) and the acceptance thereof hereinabove referred to." In pursuance of his agreement, Pattee made out and delivered to plaintiffs the assignment and order as specified in the contract. The assignment and order remained in the possession of the plaintiffs, and were produced by them at the trial; and although, under the terms of the contract, plaintiffs were under no obligation to proceed with the work until the assignment and order were accepted by the board, the same remained in full force and effect so far as Pattee was concerned. There was no condition in the contract or otherwise that the assignment and order should not be valid and binding upon Pattee unless accepted, but only that the plaintiffs should not be bound to the performance of the contract on their part unless the assignment and order should be accepted by the board; and therefore it was competent for the plaintiffs to waive acceptance, and go on and perform their contract, retaining and relying upon the assignment to secure them. This seems in effect to have been done under the explanation and agreement of J. H. Gale, cashier of the defendant bank. Upon the receipt of his letter of August 16th, the plaintiffs delivered their contract and bond to Pattee, and proceeded to perform their contract. The case of Ware v. Allen, 28 U. S. 590, 9 Sup. Ct. Rep. 174, cited by defendant's counsel, is not, it seems to us, an analogous case. In that case Allan, West & Bush executed and delivered to plaintiff, W. P. Ware, a written instrument for the payment of $10,000 to said W. P. Ware or order. Before the instrument was signed or

agreed upon, it was distinctly understood that it was to be of no effect unless, upon consultation with certain parties named, the defendants, Allan and others, were assured that the proceeding was lawful, etc. Upon such consultation with one of the parties to be consulted, he disapproved of the arrangement, but Ware brought his suit upon the instrument. The court in its opinion says: "We are of the opinion that this evidence shows that the contract upon which this suit is brought never went into effect; that the condition upon which it was to become operative never occurred; and that it is not a question of contradicting or varying a written instrument by parol testimony, but that it is one of that class of cases, well recognized in the law, by which an instrument, whether delivered to a third person as an escrow or to the obligee in it, is made to depend, as to its going into operation, upon events to occur or be ascertained thereafter." In the case at bar, Pattee, who executed the assignment and order, made no condition as to its taking effect, but made and delivered it unconditionally, just as he had agreed in his contract to do. Plaintiffs, to protect themselves, provided in the contract that unless the assignment was accepted they should not be bound to proceed with the contract, but they did proceed, and performed their contract, and retained, and it appears relied upon, the assignment and order, and produced it as a part of their evidence on the trial.

2. Again, counsel for defendant contended that the original agreement between Pattee and the plaintiffs was altered, changed, and modified by a new arrangement made by Pattee through the bank, and hence, if it ever existed as a valid and binding contract, it was superseded by the new contract, and the old one wholly abandoned, at least as to the assignment and order; the new method of payment taking its place. There would, perhaps, be force in this position, if such an issue had been made in the case; but there is no allegation in the complaint that the original contract was altered, changed, or modified, and defendant has not set out any such change or modification as a defense. It is admitted, it is true, that the assignment was not accepted by the board, and it is claimed by defendant

that the letter of Pattee of August 15th, the letter of J. H. Gale of August 16th, and the reply of plaintiffs of August 18th, show such an alteration or change. But it must be remembered that these documents could only have been admitted in evidence under the pleadings to prove knowledge on the part of the bank of the assignment of the fund by Pettee to plaintiffs, and not to prove, as we understand it, any change or modification in the contract. The alteration of the terms of a contract is equivalent to making a new contract, consisting of the new terms, and what remains unchanged of the original contract. The old agreement being incorporated into the new, the latter must be construed with reference to it. 3 Amer & Eng. Enc. Law, p. 890, and cases cited. Such alteration or change is a matter of defense. If the defendant, therefore, desired to avail itself of such alteration as a defense, it should have pleaded it, where, as in this case, it is not set out in the complaint; and an issue could then have been made upon it, and the question of whether or not there had been such an alteration or change could have been properly tried and determined. There being, then, no such issue in the case, and the documents introduced in evidence being competent, as it is conceded by counsel, to show knowledge of the assignment on the part of the defendant, we do not deem it necessary to discuss the question presented, or to decide whether or not the facts, if presented on a proper issue, did show such an alteration or change, or what effect such an alteration or change, if established, would have had upon plaintiffs' case.

3. It is also claimed by counsel for the defendant that the letter of Gale of August 16th, and the reply of plaintiffs' of August 18th, were only competent under the pleadings to show that the defendant had notice of the assignment. In this position we think counsel are correct. But, as it does not appear from the statement of the case that the learned court admitted these documents in evidence for any other purpose, there was no error in their admission. These letters were clearly competent and relevant for the purposes of proving notice to the bank of the assignment, as knowledge of the cashier of a bank

is the knowledge of the bank.   Farmers & Traders Bank v.
Kimball Milling Co.. (S. D.)  47 N. W. Rep. 402; Stebbins v.
Lardner, (S. D.) 48 N. W. Rep. 847.   Therefore, it does not
become important to inquire whether J. H. Gale. in writing the
letter of August 16th, was acting for the bank or as an indi-
vidual, as it was admitted he was at that time acting as cashier
of the bank, and and it appears from  both  the letters of J. H.
Gale and Pattee that the president of the board of trustees was
also president of the bank at that time, and this fact is not con-
troverted by the defendant.

4.   It is also contended that the assignment was one of that
character that could not, if accepted, be binding upon the
board; that board being  composed of  officers of the territory,
against which no contract could be enforced  by an  action.   It
may be true that no action could have been  maintained against
the territory on this assignment, and  that it could not have
been enforced against the territory,—the assignment being of
a fund or part of a fund to be paid by the territory; but we do
not think it follows because the territory could  not, from rea-
sons of public policy, be subject to an  action on  the assign-
ment, that such an assignment as between parties themselves
is not valid.   When the funds so assigned  came into the hands
of a private person or corporation with  notice  of the assign-
ment, and  such  person or corporation shows no superior title
to the fund, we are unable to discover any valid reason why the
equitable owner of such a fund may not enforce the payment of
it as against such person or private corporation.   We agree,
therefore, with the counsel for the plaintiffs, that such an as-
signment is valid and binding as between the parties.   It seems to
be now a well-settled doctrine that an assignee of a part of a des-
ignated and specific fund, whether due or  to become due, is in
equity the owner of the fund, and may enforce its payment by
one who has possession of the specific fund, who has no super-
ior claim upon it, with notice of the assignment.   "Equity rec-
ognizes an  interest in the fund in the nature of an equitable
property obtained through  the assignment, or order which
operates as an assignment, and permits such interest to be en-

forced by an action, even though the debtor or depositary has not assented to the transfer. It is an established doctrine that an equitable assignment of a specific fund in the hands of a third person creates an equitable property in such fund.   *   * In order that the doctrine may apply, and that there may be an equitable assignment creating an equitable property, there must be a special fund, sum of money, or debt actually existing or to become so *in futuro*, upon which the assignment may operate, and the agreement, direction for payment, or order must be in effect an assignment of that fund, or of some definite portion of it.'' 3 Pom. Eq. Jur. § 1280. This doctrine seems to be sustained by numerous decisions upon this subject, a few of which are cited: Field v. Mayor, etc., of New York, 6 N. Y. 179; Wright v. Ellison, 1 Wall. 16; Peugh v. Porter, 112 U. S. 737, 5 Sup. Ct. Rep. 361; Bank v. McLoon, 73 Me. 498; Grain v. Aldrich, 38 Cal. 514; Parker v. Syracuse, 31 N. Y. 376; Brill v. Tuttle, 81 N. Y. 454; Risley v. Bank, 83 N. Y. 318; Fordyce v. Nelson, 91 Ind. 147; County of Des Moines v. Hinkley, 62 Iowa, 637, 17 N. W. Rep. 915; Clark v. Gillespie, (Tex, Sup.) 8 S. W. Rep. 123; Campbell v. Hildebrant, (Tex. Sup.) 2 S. W. Rep. 244; Kirtland v. Moore, (N. J. Ch.) 2 Atl. Rep. 271; James v. Fewton, 142 Mass. 366, 8 N. E. Rep. 122; Daniels v. Meinhard, 53 Ga. 359; Lapping v. Duffy, 47 Ind. 51; Canty v. Latterer, 31 Minn. 239, 17 N. W. Rep. 385; Bank v. Kimberlands, 16 W. Va. 555.

5. Defendant's counsel also insisted that, as Pattee had not earned the fund at the time of the assignment, it could have no legal effect, for the want of an object upon which to operate. And they cite Hassie v. Congregation, 35 Cal. 378; Kendall v. U. S., 7 Wall. 116. But an examination of these cases does not, we think, support the theory of the counsel, and they are not inconsistent with the rule established in the cases cited to the last proposition, in many of which the assigned claim is spoken of as due or to become due. See 3 Pom. Eq. Jur. §1280. The proposition of counsel would be of much force if this was strictly an action at law; but, as we shall see hereafter, this may be treated upon the facts stated as an ac-

tion to enforce an equitable demand. The distinction between legal assignments that may be enforced in an action at law, and an equitable assignment that can only be enforced in an equitable action, seems to be this: That an assignment, to be valid as a legal assignment that can be enforced in an action at law, must·be of a debt or fund in existence at the time, and of the whole thereof, or of a part of a debt or fund then in existence, and the assignment or order transferring the fund accepted by the debtor or person holding the fund. But in an equitable assignment of a specific debt or fund, or part of a specific debt or fund, it is not an essential element that the debt should have been earned or the fund be *in esse* at the time of the assignment or order transferring the debt or fund, or that the assignment or order transferring the specific debt or fund, or a part thereof, should be accepted by the debtor or holder of the specific fund. The assignment and notice of the assignment to the debtor or holder of the fund being sufficient to bind the specific debt or fund in the hands of the debtor or holder in equity, such an assignment can be enforced in equity when the debt is earned or the fund is *in esse.* This distinction is clearly recognized in the California case cited. The assignment there was held to be an equitable assignment that could not be reached by garnishee process; the court saying: "The subject of the assignment was not *in esse*, and might never be. Upon such an assignment, no action at law can be maintained. To make an assignment valid at law, the thing assigned must have an actual existence at the date of the assignment. The right or claim acquired by Kincaid, if any, by virtue of the assignment against the defendant, was an equity only,—a lien upon a fund thereafter to be created, which could be enforced only by a court of equity." The assignment in 7 Wall. cited, was held to be too vague and indefinite to be enforced either in law or equity.

6. It is also strenuously contended by counsel for defendant that this is an action at law, and under the decisions cannot be maintained. This presents, in our view, the most im-

portant question in the case.   It is no doubt settled law that an assignment of a part of a fund not accepted or ratified by the debtor can only be recovered in equity.   In jurisdictions where the old equity system prevails, and law and equity are administered in separate courts, or where the common law and equity systems of pleading prevail as distinct systems of pleading and practice, the objection taken might be urged with some force to plaintiff's right to recover in this action.   But in this state, where the reform system of pleading and practice is in force, and equity and law are administered in the same court by the same judge, we think there is no serious difficulty in disposing of the question.   Section 4830 of the Compiled Laws provides that: "The distinction between actions at law and suits in equity, and the forms of all such actions and suits, heretofore existing, are abolished: and there shall be in this territory, hereafter, but one form of action for the enforcement or protection of private rights and the redress of private wrongs, which shall be denominated a civil action.   In such action the party complaining shall be known as the plaintiff, and the adverse party as the defendant."   The distinction, therefore, in the forms of action, is swept away by this section. Law and equity, as two distinct systems, still remain.   It is the distinction between the forms of actions at law and suits in equity only that has been abolished.   How, then, is the court to determine when an action is one at law or one in equity? Clearly, by the facts stated in the complaint, and the subject-matter of the action.   Judged by this test, is not this action one to enforce an equitable right?   Does it not state substantially all the facts that it would have been necessary to state in a bill in equity under the old system?   What additional facts would the pleader have stated in a similar action under the equity system of pleading?   It will be seen by an examination of the complaint that all the facts showing that plaintiffs are the equitable owners of $7,088 of the steam heating fund in the possession of the defendant are fully set out.   It is insisted that defendant is subject to a suit by Pattee for the same fund and this judgment would be no bar to such a suit.   The answer

to this is that, if Pattee was a necessary party to a complete determination of the controversy, this matter should have been brought to the attention of the court, either by a demurrer to the complaint, or motion under Section 4885, Comp. Laws, and a failure to demur or move the court to bring in an additional party or parties is a waiver of such defect, if there be one. Again, if defendant honestly believed that Pattee had any claim to the fund, it could have protected itself by bringing the fund into court, and procuring an order discharging it from liability, under Section 4887, Comp. Laws. Grain v. Aldrich, 38 Cal. 514; Brill v. Tuttle, 81 N. Y. 454; Risley v. Bank, 83 N. Y. 318.

7. Defendant further insists that the bank officers had no authority to bind the bank, it being a national bank, and only vested with special powers. In our view of the case, this question does not become material, as we hold, if the bank had this fund in its possession with knowledge that it had been assigned to the plaintiffs, and had itself no superior claim upon the fund, the law imposed upon it the duty of paying it over to plaintiffs when satisfied that plaintiffs had performed their contract. That they had so performed it is admitted, and hence the duty the law imposed upon it clearly arose. But, if this question was before the court, we should have no hesitancy in holding that when money is deposited in a bank under an agreement by its officers, made with the consent of the depositor, to pay it to a designated party, the bank would be bound to so pay it. One of the powers specially conferred upon national banks is to receive deposits. Rev. St. U. S. § 5136. The power to receive deposits necessarily carries with it the power to contract as to the parties to whom the deposit shall be repaid.

8. It is also contended that the court erred in excluding the evidence offered by the defendant, and in directing a verdict for the plaintiffs. The evidence offered was substantially that set out in its answer. The fact that Pattee was a depositor of the bank, and had deposited the vouchers on which the funds in controversy were obtained, does not, in our opinion, constitute any defense to the action. If, as shown, this fund,

or $7,088 of it, was assigned to the plaintiffs,—and this seems to have been conclusively proven,—it equitably belonged to the plaintiffs, and neither the defendant nor Pattee had any right to detain it from them. Even while the vouchers were in the hands of Pattee, he only held them as trustee for the plaintiffs. Bank v. McLoon, *supra.* The evidence, therefore, sought to be introduced, was clearly immaterial, and was properly excluded. And the same may be said of the bill for $261.95, as, under the assignment, which was for a specific sum, defendant had no right to deduct that amount from the fund. With the assignment conclusively proven, the performance of the contract admitted, the receipt of the fund by the defendant admitted, the notice of the assignment by the bank fully show, and no evidence being offered to controvert it, and the defendant not claiming any superior right to the fund, the court was fully justified in directing a verdict. In fact, it was peculiarly. within the control of the court, as the case, being one of an equitable nature, could have been tried by the court without a jury. These facts, then, being fully proved or admitted, clearly entitled plaintiffs to a verdict, without regard to whether or not the money had been placed to the account of Pattee, or whether or not Pattee had or had not directed defendant not to pay it to plaintiffs. Having assigned it, he had parted with his control over it. It had ceased to be his money, and belonged to the plaintiffs, and any direction on his part could not deprive plaintiffs of their funds. It was a specific fund, and had been assigned to the plaintiffs, of which defendant had through its officers full notice, not only of the assignment, but of all facts connected with it. It was a fund that could be followed and identified in the possession of the defendant. Farmers & Traders Bank v. Kimball Milling Co., (S. D.) 47 N. W. Rep. 402. There being no error in the record, the judgment of the court below must be affirmed, and it is so ordered. All the judges concurring.