#25403-r-SLZ

**2010 SD 36**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

| | |
|---|---|
| A. UNRUH CHIROPRACTIC CLINIC, | Plaintiff and Appellee, |
| v. | |
| DE SMET INSURANCE COMPANY OF SOUTH DAKOTA, | Defendant and Appellant, |
| and | |
| DE SMET INSURANCE COMPANY OF SOUTH DAKOTA, | Third-Party Plaintiff and Appellant, |
| v. | |
| HENRY LENTSCH and DOROTHY LENTSCH, | Third-Party Defendants. |

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT
OF THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE WILLIAM J. SRSTKA, JR.
Judge

\* \* \* \*

| | |
|---|---|
| JAMES R. EVEN<br>Sioux Falls, South Dakota | Attorney for plaintiff and appellee. |
| LARRY M. VON WALD of<br>Beardsley, Jensen and Von Wald,<br>  Prof. LLC<br>Rapid City, South Dakota | Attorneys for defendant, third-party plaintiff and appellant. |

\* \* \* \*

ARGUED ON MARCH 24, 2010

OPINION FILED **05/05/10**

#25403

ZINTER, Justice

[¶1.]		In the course of providing treatment, Unruh Chiropractic Clinic
(Unruh) obtained assignments of proceeds of personal injury claims from two
patients.  The patients' claims arose out of injuries they sustained in an automobile
accident involving a negligent driver insured by De Smet Insurance Company (De
Smet).  Although Unruh gave De Smet notice of the assignments, De Smet settled
the claims on behalf of its insured without paying the proceeds to Unruh for its
unpaid services.  Unruh subsequently commenced this action against De Smet to
recover under the assignments.  On cross-motions for summary judgment, a
magistrate court ruled in favor of Unruh, concluding that the assignments were
enforceable.  The circuit court affirmed, and De Smet appeals.  We reverse.

*Facts and Procedural History*

[¶2.]		On June 5, 2007, Henry and Dorothy Lentsch were involved in an
automobile accident with Opal Omanson. Omanson was insured by De Smet.  De
Smet apparently conceded that Omanson was at fault.

[¶3.]		On June 6, 2007, Unruh began treating Lentsches for injuries
sustained in the accident.  Prior to treatment, Lentsches each signed separate
documents entitled "ASSIGNMENT OF PROCEEDS."  The pertinent language of
the assignments provided:

> In consideration of the furnishing by A. Unruh Chiropractic
> Clinic PC of Chiropractic care at my request and for my benefit;
> I, for myself and my heirs, assigns personal representatives and
> successors in interest, DO HEREBY IRREVOCABLY SELL,
> ASSIGN, TRANSFER AND SET OVER TO A. UNRUH
> CHIROPRACTIC CLINIC PC all my right, title and interest in
> and to any settlement, judgement [sic] or recovery from Opal

-1-

Omanson to the extent of any unpaid chiropractic charges owed by patient to Unruh Chiropractic Clinic PC.

I, FURTHER FOR MYSELF AND MY HEIRS, ASSIGNS, PERSONAL REPRESENTATIVES, AND SUCCESSORS IN INTEREST IRREVOCABLY SELL, ASSIGN, TRANSFER AND SET OVER TO A. UNRUH CHIROPRACTIC CLINIC PC all my rights to receive the proceeds of any policy of insurance (including health, accident, liability or other) which indemnifies [ ] [Opal Omanson] in the event of such settlement, judgement [sic] or recovery, (including specifically the proceeds paid by any insurance company on behalf of the above named person) or which provides coverage for the assignor, herein.

IN CLARIFICATION OF THE FOREGOING, it is hereby agreed that the patient shall at all times remain the real party in interest in the said claim or law suit, and no such rights to a cause of action shall inhere to the A. Unruh Chiropractic Clinic PC as a result of this assignment. A. Unruh Chiropractic PC's interest in the proceeds is the equivalent of an equitable assignment, lien, or other security arrangement confined solely to the unpaid balance of its charges of chiropractic services rendered in treatment of the patient for matters related to the personal injury suffered by the patient at the hands of a third party tortfeasor. . . .

[¶4.] Unruh served copies of the assignments and notices of the assignments on De Smet. The notices informed De Smet that any proceeds of insurance for Lentsches' claims should be paid directly to Unruh to the extent of any unpaid chiropractic services. The notices further informed De Smet that if Unruh was not named as a payee on any settlement checks, De Smet would be required to make a second payment directly to Unruh.

[¶5.] Lentsches continued treatment with Unruh until July 2007. In September 2007, Henry arranged for Lentsches' son, who had a power of attorney for Dorothy, to enter into settlement negotiations with De Smet. Lentsches disputed some of Unruh's charges and they refused to settle with De Smet if it

included Unruh as a payee on the check.  Lentsches' son ultimately executed releases of Omanson and De Smet in exchange for cash settlements.  Notwithstanding the notices and assignments, the releases provided that Lentsches would be responsible for paying their medical care providers.  Accordingly, De Smet delivered the settlement checks directly to Lentsches.  Further, De Smet did not include Unruh as a payee on the settlement checks.  The settlement amount exceeded Unruh's unpaid charges.

[¶6.]     Unruh learned of the settlements and attempted to collect the amount owed for unpaid chiropractic services rendered.  Unruh first demanded payment from Lentsches.  When Lentsches refused to pay, Unruh demanded payment from De Smet.  De Smet also refused to pay.  Unruh subsequently filed this action to enforce the assignments in small claims court.  De Smet removed the case to the formal side of magistrate court, and both parties moved for summary judgment.  The court acknowledged the common-law prohibition on the assignment of personal injury claims.  The court, however, concluded that there was a legal distinction between assignments of claims and assignments of proceeds of claims.  Therefore, the court ordered enforcement of the assignments.

[¶7.]     On appeal, the circuit court affirmed.  The circuit court acknowledged the split of authority on the enforceability of such assignments.  The court analyzed the competing views and followed those authorities recognizing the legal distinction between assignments of claims and assignments of proceeds of claims.  Considering the distinction, the circuit court concluded there was "no danger of champerty or

any public policy reason to preclude the assignment of expected proceeds from a personal injury claim."

*Decision*

[¶8.]     Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." SDCL 15-6-56(c). The parties agree there is no issue of material fact regarding the creation of the assignments. The enforceability of the assignments is a question of law. "We review questions of law de novo with no discretion given to the circuit court." Pauley v. Simonson, 2006 SD 73, ¶ 7, 720 NW2d 665, 667 (citation omitted).

[¶9.]     South Dakota recognizes the common-law prohibition on the assignment of personal injury claims. *See* Schuldt v. State Farm Mut. Auto. Ins. Co., 238 NW2d 270, 271-72 (SD 1975) (holding that subrogation clauses in automobile policies do not constitute "illegal assignment[s]" of personal injury claims). The common-law prohibition is grounded on two principles: first, prior to wrongful death statutes, personal claims did not survive the death of the victim; and second, the prohibition prevented maintenance and champerty, *i.e.*, profiteering and speculating in litigation, "which would disturb the peace of society, lead to corrupt practices, and prevent the remedial process of law."[1] McKellips v.

---

1.     Maintenance and champerty are defined as follows:

> Maintenance is . . . "an officious intermeddling in a suit that in
> no way belongs to one, by maintaining or assisting either party
> (continued . . .)

Mackintosh, 475 NW2d 926, 928 (SD 1991) (citing Schnabel v. Taft Broad. Co., 525 SW2d 819, 823 (MoCtApp 1975) (citations omitted). *See also* Quality Chiropractic, PC v. Farmers Ins. Co. of Ariz., 132 NM 518, 522, 51 P3d 1172, 1176 (CtApp 2002) (noting these doctrines are in place to prevent the "unscrupulous trafficking in litigation as a commodity"). Although wrongful death statutes have alleviated the first concern, maintenance, champerty, and the concerns underlying those doctrines continue to prohibit the assignment of litigation claims. *See McKellips*, 475 NW2d 926 (voiding, on public policy grounds of champerty, an agreement to loan money to finance a lawsuit in return for a percentage of the litigant's recovery).

[¶10.] De Smet argues that the concerns underlying the common-law prohibition preclude enforcement of Lentsches' assignments of proceeds of claims. De Smet also points out that recent cases have articulated additional factors extending the common-law prohibition to assignments of proceeds. De Smet contends that in addition to the older common-law concerns, the enforcement of assignments of proceeds will discourage settlement and promote litigation, increase the burden on the tortfeasor and insurer, and open the door for other creditors to

---

(. . . continued)

> with money or otherwise, to prosecute or defend it; . . . ." Champerty, a form of maintenance, involves an agreement under "which a person who has no interest in the suit of another undertakes to maintain or support it at his own expense in exchange for part of the litigated matter in event of a successful conclusion of the cause."

*McKellips*, 475 NW2d at 928-29 (internal citations omitted).

seek debt protection through assignments. *See* W. Broad Chiropractic v. Am. Family Ins., 122 OhioSt3d 497, 912 NE2d 1093 (2009).

[¶11.]     There is a split of authority on the question whether the common-law prohibition against the assignment of personal injury claims also prohibits the assignment of proceeds of a claim. The view prohibiting the assignment of personal injury claims, but allowing the assignment of the proceeds of a claim, is based on the distinction between legal and equitable assignments. Courts enforcing assignments of proceeds observe that such assignments are an equitable lien on a non-vested future interest, and therefore, the assignee cannot control the claim. Those courts conclude that because the assignee has no ability to independently pursue the claim when an equitable lien is created, the assignment of proceeds does not implicate maintenance and champerty or other public policy concerns. *See In re Musser*, 24 BR 913 (WDVa 1982) (concluding that a statute expressing the common-law prohibition against assignments of claims for personal injuries does not proscribe a hospital from obtaining an equitable assignment of proceeds to the extent of the value of the services provided by hospital); Hernandez v. Suburban Hosp. Ass'n, 319 Md 226, 235, 572 A2d 144, 148 (1990) (concluding that such an assignment is a legally enforceable equitable claim not implicating a "danger of champerty or maintenance, nor any other public policy reason to preclude" such an assignment); Achrem v. Expressway Plaza Ltd. P'ship, 112 Nev 737, 741, 917 P2d 447, 449 (1996) ("[A] meaningful legal distinction exists between assigning the rights to a tort action and assigning the proceeds from such an action. . . . When the proceeds of a settlement are assigned, the injured party retains control of their

lawsuit and the assignee cannot pursue the action independently."); Charlotte-Mecklenburg Hosp. Auth. v. First of Ga. Ins. Co., 340 NC 88, 91, 455 SE2d 655, 657 (1995) ("There is a distinction between the assignment of a claim for personal injury and the assignment of the proceeds of such a claim. . . . The assignment of the proceeds of a claim does not give the assignee control of the case and there is no reason it should not be valid."); Winship v. Gem City Bone & Joint, P.C., 185 P3d 1252, 1257 (Wyo 2008) (upholding assignment on alternative grounds, including that patient "assigned the proceeds of his claim rather than the claim itself").

[¶12.]      Relying on this line of authority, Unruh points out that it only obtained "equitable assignments" that specifically provided "no . . . rights to a cause of action shall inhere to [Unruh] as a result of [the] assignment[s]." Unruh further points out that the assignments were limited to the extent of the chiropractic services provided. Under these circumstances, Unruh argues that Lentsches retained legal control over their claims, and therefore, the public policy concerns prohibiting the assignment of claims are not implicated by these assignments of proceeds.

[¶13.]      De Smet relies on cases adopting the opposing view. Those cases conclude that the common-law prohibition against assignments of claims also prohibits assignments of proceeds of claims because any distinction between the two is "at best . . . a distinction without a difference." Karp v. Speizer, 132 Ariz 599, 601, 647 P2d 1197, 1199 (CtApp 1982) (adopting view that assignments of proceeds as well as assignments of claims for personal injury are unenforceable because assignments of proceeds are equivalent to assignments of claims). *See also* S. Farm

Bureau Cas. Ins. Co. v. Wright Oil Co., 248 Ark 803, 809, 454 SW2d 69, 72 (1970) (stating "there is no sound basis for distinguishing between the cause of action and its proceeds as far as assignability is concerned"); Town & Country Bank of Springfield v. Country Mut. Ins. Co., 121 IllApp3d 216, 218-19, 459 NE2d 639, 640-41 (1984) (concluding that the distinction between assignments of claims and proceeds is a fiction not necessary to support public policy prohibiting assignments of proceeds); Midtown Chiropractic v. Ill. Farmers Ins. Co., 847 NE2d 942 (Ind 2006) (construing the common law to prohibit an assignment of proceeds and leaving it to the legislature to change the rule); *Quality Chiropractic*, 132 NM at 525-27, 51 P3d at 1179-81 (rejecting the distinction between assignments of claims and proceeds, observing that public policy prohibits allowing assignments to be treated "as currency" for any purpose, and litigation complications in the medical arena make "it best to leave to the legislature the decision as to whether to recognize health care assignments").

[¶14.] We observe that there is a technical, legal distinction between the assignment of a personal injury claim and the assignment of the proceeds of that claim. The assignment of a personal injury claim is a legal assignment that involves the "transfer of a present right which divests the assignor of all control over that which is assigned." *Musser*, 24 BR at 919. On the other hand, one can only obtain an equitable assignment of a prospective settlement or judgment arising from a claim because it is "[a]n assignment . . . of a future right, such as money to be acquired in the future[.]" *Id.* South Dakota has long recognized this distinction and allowed enforcement of equitable assignments of proceeds of claims not yet

matured. In *Sykes v. First Nat'l Bank*, we concluded that an assignment of proceeds of a claim not yet matured creates an equitable right that is valid and enforceable: "[A]n assignee of a part of a designated and specific fund, whether due or to become due, is in equity the owner of the fund, and may enforce its payment by one who has possession of the specific fund, who has no superior claim upon it, with notice of the assignment." 2 SD 242, 255, 49 NW 1058, 1062 (1891). In contrast, we noted that "legal assignment[s] . . . must be of a debt or fund in existence at the time, and of the whole thereof, or of a part of a debt or fund then in existence[.]" *Id*. For those courts enforcing assignments of proceeds of claims, this distinction is important because by transferring the whole right to an existing claim:

> [T]he assignor's right to performance by the obligor is extinguished and the assignee acquires a right to such performance. *See* J. Calamari & J. Perillo, *The Law of Contracts* § 18-3 (2ded 1977)[ ]; Restatement (Second) of Contracts § 317 (1981). In other words, a legal assignment is a transfer of a present right which divests the assignor of all control over that which is assigned.

*Musser*, 24 BR at 919. Based on the transfer of control to the assignee, legal assignments of claims directly implicate maintenance and champerty. On the other hand, those courts that enforce equitable assignments avoid the common-law policy concerns of maintenance and champerty by concluding that "the equitable assignor retain[s] exclusive control over his lawsuit and any settlement thereof." *Id*. at 920.

[¶15.] Unruh relies on this distinction, reiterating that it only obtained equitable assignments. Unruh argues that because South Dakota has followed the legal versus equitable assignment distinction since our *Sykes* decision in 1891, we should follow those authorities allowing enforcement of assignments of proceeds of

personal injury claims to the extent services were provided. Subsequent South Dakota law does not, however, support Unruh's argument.

[¶16.] It took only six years from South Dakota's 1891 recognition of the distinction between legal and equitable assignments until this Court also recognized that equitable assignments violating public policy may not be enforced. *See* State, to Use of Perkins v. Barnes*, 10 SD 306, 310, 73 NW 80, 82 (1897) (refusing to enforce an assignment of future salary on the ground that, at that time in our history, "such an assignment [was] void as against public policy"). Therefore, although we recognized the distinction between legal and equitable assignments, we also recognized that the distinction does not permit enforcement of an equitable assignment that violates public policy. Although public policy strongly favors freedom to contract, "[it] is not an absolute right or superior to the general welfare of the public." Siefkes v. Clark Title Co., 88 SD 81, 88, 215 NW2d 648, 651-52 (1974).

[¶17.] Under the facts of this case, the technical, legal distinction between legal and equitable assignments did not avoid the concerns underlying the common-law prohibition. "[M]aintenance is . . . 'officious intermeddling in a suit that in no way belongs to one, by maintaining or assisting either party with money or otherwise, to prosecute or defend it[.]'" *McKellips*, 475 NW2d at 928 (citation omitted). Henry Lentsch's affidavit, which Unruh has not contested, alleged that after Henry told Unruh he did not believe his wife required further chiropractic care, Unruh "told [Henry] that [Unruh] had a lawyer who would handle [the Lentsches'] claims and get the money [they] needed to pay for the treatments."

Unruh also failed to dispute Henry's affidavit alleging that Unruh attempted to bring about the termination of the power of attorney the Lentsches' son possessed. It appears Unruh was attempting to intermeddle in maintaining litigation against the tortfeasor.

[¶18.] Furthermore, these assignments interfered with the law's historical preference for settlement of disputes. *See* Driscoll v. Driscoll, 1997 SD 113, ¶ 17, 568 NW2d 771, 774 (stating that "it is good public policy to encourage settlement agreements"); Heidemann v. Rohl, 86 SD 250, 261, 194 NW2d 164, 170 (1972) ("It is not the policy of the law to encourage litigation, but rather to favor settlement." (citation omitted)) *abrogated on other grounds by* Chambers v. Dakotah Charter, Inc., 488 NW2d 63 (SD 1992); Busch v. S.D. Cent. Ry. Co., 29 SD 44, 45, 135 NW 757, 758 (1912) ("[T]he law favors the settlement of disputed claims out of court."). The Ohio Supreme Court recently discussed this concern. *W. Broad Chiropractic*, 122 OhioSt3d at 500-01, 912 NE2d at 1097. In that case, an injured victim of an automobile accident assigned her right to proceeds from a prospective settlement in exchange for chiropractic care. In holding the assignment of proceeds unenforceable, the court explained how such assignments promote litigation and discourage settlement:

> A chiropractor or other assignee expects full payment and lacks interest in negotiating the amount of the debt. Likewise, the third-party insurer lacks the ability to dispute the amount or reasonableness of the charges. The insurer must take these factors into account when settling the claim, and the result may be less to the injured party, forcing him or her to litigate in hopes of obtaining a greater recovery.

*Id.* at 500-01, 912 NE2d at 1097. *See also Quality Chiropractic*, 132 NM at 526, 51 P3d at 1180 ("[A]llowing injured tort victims to assign the proceeds of their personal injury claims could add unnecessary complications to the settlement of relatively straightforward cases.").

[¶19.]     In this case, after the Lentsches gave the assignments, a dispute developed between the Lentsches and Unruh over the charges for and necessity of Dorothy's treatment.[2]  Dorothy was 87 years of age and not competent to make decisions regarding her care.  Nevertheless, Unruh does not dispute that it denied Henry access to view his wife's treatments and threatened to have legal action taken against Henry if he did not bring his wife back for more treatment.  As a result of these disputes, Henry "[took] the position that [he] would not settle the claims against Ms. Omanson if the insurance company insisted upon including [Unruh] on the settlement checks because the billings were disputed."  Unruh has not disputed that the Lentsches would not settle their claims if Unruh was made a joint payee on the settlement check.  Furthermore, there is no dispute that Unruh demanded full payment from the Lentsches and De Smet.  Thus, the Lentsches were being pressured to litigate with the tortfeasor and insurer or relent on their disputes with Unruh.  This put the Lentsches in the position articulated in *W. Broad Chiropractic*.  It discouraged settlement and promoted litigation contrary to

---

2.     Lentsches alleged that Unruh increased his rates from those previously charged.  Unruh does dispute this allegation.  Although the merits of the dispute are contested, the merits are not material.  In this case, it makes no difference whether Unruh increased its rates upon learning of the insurance and obtaining assignments.  The only material matter is the uncontested existence of a dispute, which added complications to settlement.

the law's well-established preference for settlement of disputes. *See Driscoll*, 1997 SD 113, ¶ 17, 568 NW2d at 774; *Heidemann*, 86 SD at 261, 194 NW2d at 170; *Busch*, 29 SD at 45, 135 NW at 758.

[¶20.]        We finally note two more recently expressed concerns.  First, such assignments "open[ ] the door for other creditors to seek debt protection through [such] assignments. . . ." *W. Broad Chiropractic*, 122 OhioSt3d at 501, 912 NE2d at 1097.  The Ohio Supreme Court explained that this result necessarily follows because there is no basis to enforce assignments to chiropractors but not other potential creditors.  Second, "if an injured person executes multiple assignments to a variety of creditors, the third-party insurer may be faced with determining the priority of assignments and how to distribute settlement proceeds pro rata among numerous assignees if the debt exceeds the amount of the settlement." *Id.* Therefore, allowing the assignment of proceeds of personal injury claims may increase the burden on the insurer by "thrust[ing] [it] into a credit situation that is completely unrelated to the underlying accident, and the unrelated third party becomes a de facto collection agent that must prioritize and pay debts to avoid personal liability." *Id.  See Quality Chiropractic*, 132 NM at 526, 51 P3d at 1180 (stating assignments that increase the burden on the obligor are unenforceable (citing Herzog v. Irace*, 594 A2d 1106, 1108-09 (Me 1991))).

*Conclusion*

[¶21.]        These equitable assignments implicated the common-law concerns underlying maintenance and champerty.  They permitted Unruh to intermeddle in the Lentsches' decision relating to the pursuit of litigation.  Because of the dispute

regarding the necessity and cost of treatment, the assignments also discouraged settlement and increased the burden on the insurer and tortfeasor. Consequently, we are compelled to align ourselves with those cases recognizing that the vestiges of maintenance and champerty, the common-law concerns underlying those doctrines, and the considerations recognized in more recent decisions prohibited the assignments of proceeds of these personal injury claims. Although we acknowledge that competing public policy considerations have been articulated by courts adopting the opposing view, *see Hernandez*, 319 Md at 235, 572 A2d at 148, we leave it to the Legislature to balance the competing public policies and authorize such assignments should it determine that the opposing policy concerns no longer prohibit such assignments.

[¶22.] GILBERTSON, Chief Justice, and KONENKAMP, MEIERHENRY, and SEVERSON, Justices, concur.