SCHURR, Appellant, v. WEAVER, Respondent

(53 N. W.2d 290)

(File No. 9211. Opinion filed May 5, 1952)

**Raymond Hieb, H. L. Woodworth,** Ipswich, for Plaintiff and Appellant.

**J. M. Berry,** Ipswich, for Defendant and Respondent.

ROBERTS, J. Plaintiff brought this action to recover damages for breach of contract and the balance of the purchase price of a tractor, plow and cultivator.

The complaint alleged that plaintiff was the owner of a certain farm; that he and defendant entered into an oral agreement whereby plaintiff was to furnish his 1,190 acre

farm and certain livestock; that defendant was to furnish farm machinery and all labor; that each of the said parties was to own a one-half interest in the increase of livestock and in the crops and farm products grown on the premises; that by virtue of said contract defendant moved upon the farm in October, 1947, and farmed the same for the years 1948 and 1949 and took possession of the livestock; and that defendant failed to carry out certain terms of the agreement. Plaintiff asked that an accounting be had with the defendant and that plaintiff have judgment for $500, the amount owing on the purchase price of the farm machinery, and damages for breach of the contract.

Defendant in his answer admitted that he took possession of the farm and livestock under an oral agreement and that he had not paid the full amount of the purchase price of the farm machinery. Defendant alleged by way of a counterclaim that plaintiff refused to pay his share of the expenses of threshing and combining crops grown upon the leased premises and to account for proceeds owing to the defendant from the sale of cattle. It was further alleged by, defendant as follows:

"That during the time that the defendant was farming the land of the said plaintiff, the said plaintiff induced this defendant to enter into an agreement with the FEM Electric Association of Ipswich, South Dakota, whereby the said defendant agreed to unload certain poles which were being shipped to various points and used in the construction of the electric light lines of said association. That said plaintiff at the time was employed as manager of the FEM Electric Association, and he informed this defendant that because of his connection he was unable to make such contract in his own name, and agreed with the defendant that if he would enter into such a contract the said plaintiff would pay him one half of the amount of said contract, and the plaintiff would retain the balance. That the said contract was to provide that the sum of $40.00 per carload of poles was to be paid for removing the same from the cars. That in accordance with such agreement the defendant herein entered into such a contract, and thereafter checks were issued in the name of the defendant, amounting to the sum of $1200.00.

That the checks were at no time delivered to the defendant, although they were made payable to him. That the plaintiff retained the same in his possession and presented them to the defendent for endorsement only. That the defendant endorsed such checks for the plaintiff and received $160.00 in cash paid by said plaintiff. That the plaintiff wrongfully retains from said defendant the sum of $440.00, which the said plaintiff refuses to pay to him."

Plaintiff by his reply denied the allegations of the counterclaim or any liability thereunder and alleged that as an officer of the FEM Electric Association he engaged the services of the defendant to unload poles and electric equipment from railroad cars; that he did not agree to pay defendant one-half of all payments received from the association; and that amounts received from defendant in such transaction merely repaid plaintiff for money advanced by him for the hire of persons to assist in unloading cars. These are the material allegations of the pleadings.

Plaintiff at the conclusion of the evidence made a motion for a directed verdict which was overruled by the court and the cause was submitted to the jury which returned a verdict in favor of the defendant in the sum of $500. Motion for new trial was overruled and plaintiff appeals from the judgment rendered on the verdict.

Plaintiff challenges the sufficiency of the evidence to sustain the verdict and assigns as error rulings of the court in admitting and rejecting evidence.

The principal contention presented is that the alleged understanding that if defendant would enter into a contract with the FEM Electric Association for unloading poles and electric equipment plaintiff would pay defendant one-half of the amount received under such contract was without consideration and void as against public policy and that the court erred in permitting recovery on such basis. The association referred to appears to be a co-operative corporation organized for the purpose of supplying electric energy in rural areas. The evidence discloses that in October, 1947, and for some time thereafter, plaintiff was a director and was also employed to have charge of materials for the construc-

tion of transmission lines. The association made and delivered to defendant two checks amounting to $1,030 and defendant signed receipts acknowledging payments in that amount for the unloading of twenty-nine carloads of poles and electric equipment "As per contract executed by board of directors of FEM Electric Association, Inc. and Edward Weaver, dated October 14, 1947". Defendant endorsed and delivered the checks to plaintiff and payments were made to the latter. Defendant received from plaintiff $160 and asserted below a right under the agreement to recover one-half of the amount of the checks. Defendant assisted in unloading 16 cars and the amount paid to him is the approximate net after payment of helpers in unloading that number of cars.

Defendant's testimony as to the so-called contract is as follows:

"Q. In the fall of 1947, did you have some conversation with Mr. Schurr in regard to a contract with the FEM Electric Association here at Ipswich? A. Yes.

"Q. About when did that take place? A. The latter part of October. * * *

"Q. Tell the court and jury what was said? A. He told me to—they had some poles to unload and he could not enter in this because he was on the board of the FEM Electric, and asked me if I would like to do it; if I would unload those poles for him.

"Q. What did he say—was there anything said as to payment? A. I was to reecive half of the money that—the money that they received.

"Mr. Hieb: I object to the answer for the reason that it is absolutely not responsive * * *. We move that the answer be stricken.

"The Court: That answer may be stricken."

"Q. Repeat what you said and what he said. A. He came to me and asked me if I wanted to unload those poles, and I said I would be glad to. He said that he could not enter into contract and it had to be in my name, and he being a member of this board that he could receive no payment of the cost that we was to receive for unloading those poles."

On cross-examination this witness testified as follows:

"Q. Have you got a copy of the contract which you had with the board of directors of the FEM Electric Association? A. They have.

"Q. You have a copy of it, have you? A. No.

"Q. But in accordance with the contract you were to stand all the expense of unloading the poles, weren't you? A. Put that question again. (Question read to the witness.) A. Yes.

"Q. You were to pay all of the men that helped you unload them, were you not? A. Yes. * * *

"Q. You were not present at the time of unloading more than 14 or 15 of the carloads of poles were you? A No.

"Q. Mr. Schurr took care of those? A. That is right.

"Q. And he paid all of the expenses of the help in unloading the others? A. I don't know.

"Q. You didn't pay them? A. That is right.

"Q. And at the time Mr. Schurr asked you about a contract to unload poles, you were to do all the work and all the—and stand all the expense of unloading each of those carloads of poles, and at $40.00 a carload, weren't you? A. That is wrong.

"Q. What were to you to do for that $40.00, then? A. I believe the answer to that would be—nothing."

■ We fail to find in the record any substantial evidence of a promise by plaintiff to divide equally the amounts received from the FEM Electric Association. The answer wherein defendant referred to such an understanding was excluded by the court as not responsive to the question asked and was not therefore for the jury's consideration. The evidence regarding the understanding of the parties to say the least was somewhat obscure. But aside from this and assuming the agreement to have been as defendant claims, the question arises whether it so accords with public policy as to afford a cause of action.

■ Contracts contrary to public policy, that is those which tend to be injurious to the public or against the public good, are unlawful and no right of action can be founded thereon. Bartron v. Codington County, 68 S. D. 309, 2 N.W. 2d 337, 140 A.L.R. 550. This principle of public policy finds full recognition in the provisions of SDC 10.07. This court

in Minnesota, D. & P. Ry. Co. v. Way, 34 S. D. 435, 148 N. W. 858, 859, L.R.A.1915B, 925, said: "The test is the evil tendency of the contract, and not its actual injury to the public in a particular instance * * * The law looks to the general tendency of such agreements, and it closes the doors to temptations by refusing them recognition in any of its courts."

 Plaintiff as director occupied a fiduciary relation to the corporate association and its members. Norway-Pleasant Tel. Co. v. Tuntland, 68 S. D. 441, 3 N.W.2d 882. He was required to exercise the utmost good faith in all transactions touching his duties thereto. While a director is not prohibited from dealing with his corporation, yet such transactions are not without restrictions which do not apply to strangers dealing with the corporation. It is his duty to make full and frank disclosure of the circumstances and not to undertake to deal indirectly without sanction of the corporation. Troy Mining Co. v. White, 10 S. D. 475, 74 N.W. 236, 42 L.R.A. 549; Knudsen v. Burdett, 67 S. D. 20, 287 N.W. 673. If the facts are as defendant claims, this is a case of surreptitious dealing between the parties and defendant participating with a director of the corporation in the commission of a breach of duty thereto should not be permitted to recover what in effect is a gratuity for his participation in the transaction. Fletcher Cyclopedia Corporations (Perm.Edition) §§ 891, 1000. The law looks to the general tendency of the agreement and the fact that the corporation may have sustained no injury is immaterial.

It necessarily follows that recovery on the basis of the agreement cannot be sustained. The other questions presented are not likely to arise on another trial and need not be considered.

The judgment appealed from is reversed.

All the Judges concur.