**Mervin DURHAM, Plaintiff and Appellee,**

v.

**CIBA–GEIGY CORPORATION, a North Carolina Corporation, Defendant and Appellant,**

and

**Balcom Chemicals, Inc., a Colorado Corporation, d/b/a Growers Ag Service, Defendant,**

and

**Tom Varilek and Elvern Varilek, d/b/a Varilek Farm Service, Defendants and Appellees.**

No. 13402.

Supreme Court of South Dakota.

Considered on Briefs Nov. 17, 1981.

Decided Feb. 10, 1982.
Rehearing Denied March 17, 1982.

Raymond De Geest, Lake Andes, and Thomas E. Alberts of Engel & Alberts, Avon, for plaintiff and appellee.

Lawrence L. Piersol and Mark F. Marshall of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendant and appellant Ciba-Geigy Corp.

John L. Morgan and Chip J. Lowe of Morgan, Fuller, Theeler & Cogley, Mitchell, for defendants and appellees.

DUNN, Justice.

This action was commenced for recovery of damages suffered by appellee Mervin Durham (Durham) arising from an alleged breach of warranty by Ciba-Geigy Corporation (appellant), the manufacturer; defendant Balcom Chemicals, Inc. (Balcom Chemicals, Inc.), the distributor; and appellee Varilek Farm Service (Varilek Farm Service), the seller. Durham claimed that the herbicide "Milogard" failed to control the growth of the weed foxtail in his milo crop. Varilek Farm Service counterclaimed for the cost of the fertilizer and herbicides sold to Durham. Balcom Chemicals, Inc. cross-claimed against Varilek Farm Service for the balance due on its open account. The jury awarded Durham the sums of $7,500.00 for crop loss, $5,038.49 for fertilizer expenses and $2,465.00 for the "Milogard" purchased from appellant. It also awarded

to Varilek Farm Service the sum of $7,503.49 and to Balcom Chemicals, Inc. $7,710.78 for their respective claims. The trial court awarded Durham interest on that part of the judgment representing fertilizer expenses and the cost of the "Milogard". This appeal involves only the question of appellant's liability. We affirm.

Durham purchased herbicide from Varilek Farm Service for use on his 1979 milo crop near Lake Andes, South Dakota. Varilek Farm Service broadcast the herbicide onto Durham's farm land in May of 1979. Durham incorporated the herbicide into the ground using a disc. The milo seed was double-row planted four to six days after the herbicide was incorporated, and planting was completed by May 20, 1979.

On June 1, 1979, Durham noticed the appearance of foxtail weed in his milo. He reported the presence of the weed to Varilek Farm Service, who relayed the complaint to appellant's sales representative. Appellant's representative examined Durham's farm and acknowledged that foxtail weed was present in the fields. Due to the foxtail weed problem, Durham's crop yield was low.

▪ Appellant contends that the trial court erred in refusing to grant its motion for summary judgment based on Durham's failure to file a damage claim with the Department of Agriculture under SDCL 38–21–46. We disagree. SDCL 38–21–46 provides:

> Any person claiming damages from a pesticide application shall file with the secretary on a form prescribed by the secretary a written statement within thirty days after the date that the damages occurred. If a growing crop is alleged to have been damaged, the report must be filed prior to that time that twenty-five per cent of the crop has been harvested.

Appellant argues that the filing requirements of this statute serve as either a condition precedent or a statute of limitations barring Durham's cause of action because he failed to comply with the filing requirements. This argument is not valid for several reasons.

First, SDCL ch. 38–21, which is entitled Agricultural Pesticide Application, establishes an administrative procedure to govern the issuance, suspension, revocation or modification of pesticide applicator or dealer licenses. Failure to comply with the filing requirement of SDCL 38–21–46 does not affect an individual's ability to bring a breach of warranty claim, but rather may result in the secretary of the Department of Agriculture refusing to hold a hearing for the denial, suspension or revocation of a license or certification for pesticide applicators or dealers. See SDCL 38–21–49.

Second, a plaintiff would generally have a four-year statute of limitations for a breach of warranty action. SDCL 57A–2–725. However, appellant's interpretation of SDCL 38–21–46 would establish a thirty-day statute of limitations. We do not believe that the legislature intended to create such a statute of limitation's disparity which could relieve many potential defendants from liability.

Third, appellant contends that statutes similar to SDCL 38–21–46 have been interpreted by other state courts to create a condition precedent or a statute of limitations to a claimant's recovery. See *McArdle v. Stewart*, 446 P.2d 379 (Okl.1968); *Olmstead v. Reedy*, 387 P.2d 631 (Okl.1963); and *Cross v. Harris*, 230 Or. 398, 370 P.2d 703 (1962). We do not find these cases persuasive to our fact situation, however, because each of these cases involved an action in trespass in which damages resulted from the spraying activities performed by an adjoining landowner. The case before us is for breach of contract.

Appellant next contends that the trial court erred in admitting the testimony of Sherman Koopal. Koopal testified that he applied the herbicide "Milogard" in 1979 to his milo fields, and that the herbicide failed to effectively control foxtail weeds in his fields. Appellant claims that because of the dissimilarity between Koopal and Durham in their farms' soils and farming techniques, the testimony should have been excluded as irrelevant. We disagree.

Generally, "[a]n issue as to the existence or occurrence of a particular fact, condition, or event, may be proved by evidence as to the existence or occurrence of similar facts, conditions, or events, under the same, or substantially similar, circumstances." *Ellis v. Union Pac. R. Co.*, 148 Neb. 515, 518, 27 N.W.2d 921, 924 (1947) quoting 32 C.J.S. Evidence § 584 (1942). In the case before us, both Koopal and Durham purchased "Milogard" from Varilek Farm Service. They were the only South Dakota purchasers of this brand of "Milogard" in 1979. Both farmers claim to have incorporated the herbicide to a depth of two inches. Both farmers testified to the failure of the herbicide to control the growth of foxtail weed.

The testimony of the two farmers does indicate a few differences, namely: Koopal's soil was sandy loam, Koopal applied his own herbicide and incorporated it with a tandem disc, and Koopal used a single-row planting technique and repeatedly hoed and cultivated; Durham's soil was silt loam, Durham's herbicide was custom broadcast and incorporated with a tandem offset disc, and Durham used a double-row planting technique and did not harrow or cultivate his field. The two fields were located twenty-five miles apart.

The trial court found Koopal's testimony admissible after considering the evidence of similar difficulties experienced by both farmers following application of the same herbicide. (*See Moosbrugger v. McGraw-Edison Company*, 284 Minn. 143, 170 N.W.2d 72 (1969) wherein evidence of similar difficulties in identical machines was held admissible.) This court has held that the question of whether evidence is immaterial, conjectural or remote must be left to the practical judgment of the trial court and rests largely in its discretion. *Drier v. Perfection, Inc.*, 259 N.W.2d 496 (S.D.1977). We hold that the trial court did not abuse its discretion in admitting Koopal's testimony to show that the "Milogard" herbicide was defective in his field.

Appellant contends that the trial court erred in finding the disclaimer of warranty and limitation of consequential damages clause unconscionable and against public policy. Thus, appellant contends that Durham should have been denied recovery of all damages. We disagree. Appellant's conditions of sale and of warranty states:

CIBA–GEIGY warrants that this product conforms to the chemical description on the label and is reasonably fit for the purposes referred to in the Directions for Use ... CIBA–GEIGY makes no other express or implied warranty of fitness or merchantability or any other express or implied warranty. In no case shall CIBA-GEIGY or the Seller be liable for consequential, special or indirect damages resulting from the use or handling of this product. [The last two sentences are in bold print.]

However, the general information section of the label provides: "Milogard 4L controls annual morningglory, carpetweed, lambsquarter, pigweed, ragweed, *foxtail*, smartweed, and velvetleaf." (Emphasis added.)

SDCL 57A–2–313(1)(a) provides that:

Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

To create an express warranty, the seller need not use formal words such as "warrant" or "guarantee" or specifically intend to make a warranty. SDCL 57A–2–313(2). We follow the rationale of our prior decision, *Swenson v. Chevron Chemical Company*, 89 S.D. 497, 234 N.W.2d 38 (1975) and find that the label taken as a whole not only warrants that the chemical ingredients in the herbicide will conform to the label, but also expressly promises to the purchaser that "Milogard" is a selective herbicide developed to control foxtail and seven other weeds. The jury decided that this express warranty was breached and appellant does not question this finding on appeal.

The general rule regarding the award of damages arising from a breach of warranty states that the buyer "may recover as damages for any nonconformity of

tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable." SDCL 57A–2–714(1). The measure of damages for breach of warranty provides that the buyer is entitled to the difference at the time of acceptance between "the value of the goods accepted and the value they would have had if they had been as warranted[.]" SDCL 57A–2–714(2). These damages may include recovery of consequential damages. SDCL 57A–2–714(3). *See also Johnson v. John Deere Co.*, 306 N.W.2d 231 (S.D.1981). However, "[c]onsequential damages may be limited or excluded unless the limitation or exclusion is unconscionable." SDCL 57A–2–719(3); *Johnson v. John Deere Co., supra.* We also refuse to enforce provisions in a contract which are against public policy. *Swenson v. Chevron Chemical Company, supra; Schurr v. Weaver*, 74 S.D. 378, 53 N.W.2d 290 (1952).

The public policy of South Dakota is set forth in the Insecticide, Fungicide, and Rodenticide Act of 1947, SDCL 38–20A–1 to SDCL 38–20A–53, which was adopted by the legislature to protect the users of pesticides (including farmers) from the consequences of the sale, delivery, and use, of falsely labeled pesticides. This includes the situation presently before us where the label represents that foxtail will be controlled by the pesticide but the user subsequently discovers that the pesticide is ineffective to control foxtail. To permit the manufacturer of the pesticide to escape all consequential responsibility for the breach of contract by inserting a disclaimer of warranty and limitation of consequential damages clause, such as was used herein, would leave the pesticide user without any substantial recourse for his loss. One-sided agreements whereby one party is left without a remedy for another party's breach are oppressive and should be declared unconscionable. *United States Leasing Corp. v. Franklin Plaza Apts.*, 65 Misc. 1082, 319 N.Y.S.2d 531 (1971).

In this case, loss of the intended crop due to ineffectiveness of the herbicide is inevi-

table and potential plaintiffs should not be left without a remedy. Furthermore, the purchasers of pesticides are not in a position to bargain with chemical manufacturers for contract terms more favorable than those listed on the pre-printed label, nor are they in a position to test the effectiveness of the pesticide prior to purchase. These considerations have been considered by courts in refusing to enforce unconscionable contracts. *See Bank of Indiana, Nat. Ass'n v. Holyfield*, 476 F.Supp. 104 (D.Miss.1979).

We held in a similar case, *Swenson v. Chevron Chemical Company, supra*, that public policy should not allow a chemical manufacturer to avoid responsibility for the ineffectiveness of a product which was offered for one purpose, the effective control of corn rootworm larvae. To reach this conclusion, we relied on Judge Fruge's dissent in *California Chemical Company v. Lovett*, 204 So.2d 633, 639–40 (La.App.1967) which questioned:

'whether or not public policy should permit the commercial enterprise to produce a product, advertise it, and place it on the market making representations that the product is designed to serve one particular purpose, and then totally avoid any and all responsibility on its part, should the product fail to be suitable for the purpose it was intended and represented to serve.... And even if it be said that the defendant intended only to [sic] purchase of the chemicals as specified on the containers themselves, nonetheless, it is unmistakable that his motive for purchasing those chemicals was to receive a product which would be effective as an insecticide, which motive was known to the other party; and the ineffectiveness of the chemical compound as an insecticide must be deemed as error in the motive or cause of the contract thereby invalidating the contract itself.'

89 S.D. at 502–03, 234 N.W.2d at 42 ([ ] in original).

The legislature of this state has spent considerable time and effort in establishing the law of warranty in South Dakota, and the damages that are recoverable for a

breach of that warranty. Appellant seeks to restrict and abolish this established law on the label of its product to the point where there is no actionable warranty for the consumer. This is not acceptable.

We agree with the trial court's determination that appellant's disclaimer of warranty and limitation of consequential damages clause is invalid as unconscionable and contrary to the public policy of this state.* See Klein v. Asgrow Seed Company, 246 Cal.App.2d 87, 54 Cal.Rptr. 609 (1966); Gore v. George J. Ball, Incorporated, 279 N.C. 192, 182 S.E.2d 389 (1971) (finding limitations of damages clause on improperly labeled seeds violative of public policy). But see Kleven v. Geigy Agricultural Chemicals, 303 Minn. 320, 227 N.W.2d 566 (1975). We also agree with the trial court that the remainder of the contract should be enforced exclusive of the unconscionable clause and affirm the damages award for crop loss, fertilizer costs, and chemical costs. See SDCL 57A–2–302(1).

■ Appellant contends that the trial court erred in awarding Durham interest when the jury was not instructed on and did not enter an award of interest. We disagree. SDCL 21–1–11 provides, in pertinent part, that:

> Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day[.]

If it is apparent that the jury has failed to include an interest award in its verdict, the trial court has the power to add interest to the verdict if the party is legally entitled to interest. Engelberg v. Sebastiani, 207 Cal. 727, 279 P. 795 (1929); Bormann v. Beckman, 73 N.D. 720, 19 N.W.2d 455 (1945); Ewing v. Wm. L. Foley, Inc., 115 Tex. 222, 280 S.W. 499 (1926).

■ In this instance, the cost of the "Milogard" and fertilizer represented damages certain or capable of being made certain by

calculation which vested on a particular day in compliance with SDCL 21–1–11. Therefore, the trial court did not abuse its discretion in awarding Durham interest on these costs.

The decision of the trial court is affirmed.

HENDERSON, J., and MILLER, Circuit Judge, concur.

WOLLMAN, C. J., and FOSHEIM, J., concur in part and dissent in part.

MILLER, Circuit Judge, sitting for MORGAN, J., disqualified.

WOLLMAN, Chief Justice (concurring in part, dissenting in part).

Although I agree with the majority opinion's interpretation of SDCL 38–21–46, I would hold that the trial court erred in not giving effect to the disclaimer of liability for consequential damages.

I do not believe that it is fair to characterize appellant's product as having been falsely labeled or misbranded within the meaning of the labeling requirements set forth in SDCL ch. 38–20A. As I read the record, there was no evidence introduced that would have supported a finding that the Milogard did not contain the chemical ingredients listed on the label. Moreover, in addition to that portion of the label set forth under the subheading "Condition of Sale and Warranty" quoted in the majority opinion, the label stated in part:

> The Directions for Use of this product reflect the opinion of experts based on field use and tests. The directions are believed to be reliable and should be followed carefully. However, it is impossible to eliminate all risks inherently associated with use of this product. Crop injury, ineffectiveness, or other unintended consequences may result because of such factors as weather conditions, presence of other materials, or the manner of use or application all of which are beyond the control of CIBA–GEIGY or the Seller. All such risks shall be assumed by the Buyer.

---

* Under SDCL 57A–2–302(1) the issue of unconscionability is a matter of law to be deter-

mined by the trial court. Johnson v. John Deere, Co., 306 N.W.2d 231 (S.D.1981).

There was expert testimony that the effectiveness of a herbicide such as Milogard can be adversely affected by application at a rate less than that recommended for the particular soil type involved, deeper incorporation into the soil than that recommended, dry soil conditions during the germination period of the weed seeds, and cool weather during the germination period. Likewise, there was expert testimony that all of these adverse conditions were present in the instant case.

Given these variables, all of which are beyond the control of appellant or any other manufacturer of herbicides, I conclude that it was eminently reasonable and, perforce, not unconscionable for appellant to include the disclaimer of consequential damages. I find the carefully reasoned, soundly considered decision of the Minnesota Supreme Court in an analogous case to be applicable to the case at bar:

> AAtrex 80W is a highly technical specialized chemical developed and used for selective control of certain weeds or plants growing in common with other plants. A University of Minnesota Agricultural Extension Service Bulletin in evidence reports numerous experiments with herbicides, indicating that even where the product is applied under controlled conditions by experts, there is a certain percentage of failure to obtain good control. It is general knowledge, as the trial court in that rural area noted, that the eventual yield of a farm crop, such as corn, is affected by numerous and varied factors such as soil, weather, seeds, weeds, and other conditions. Considering the nature of the product itself and the multitude of conditions and factors that affect its effectiveness or its degree of effectiveness, limited favorable results could be anticipated. Finally, it is clear that the risks of failure were fairly disclosed to plaintiffs at the time of purchase in these words:

>> " * * * Crop injury, ineffectiveness or other unintended consequences may result because of such factors as weather conditions, presence of other materials, or the manner of use or application all of which are beyond the control of Geigy or the Seller. All such risks shall be assumed by the Buyer."

> We accordingly agree with the trial court's conclusion that these facts of nature and the nature of the product make conscionable the stated exclusion of consequential damages.

*Kleven v. Geigy Agricultural Chemicals*, 303 Minn. 320, 227 N.W.2d 566, 572 (1975).

It is true, as the majority opinion points out, that our legislature spent considerable time and effort in deciding whether or not to adopt the warranty provisions of the Uniform Commercial Code. As finally adopted, however, those warranty provisions also included SDCL 57A-2-719(3). Appellant did no more than to avail itself of the opportunity presented by that portion of the Uniform Commercial Code to exclude its liability for consequential damages. I do not find it unacceptable for a manufacturer to seek to avail itself of a statutory provision adopted by the same legislature that adopted the corresponding warranty provisions.[1]

I would set aside that portion of the judgment that represents an award for consequential damages resulting from the alleged diminution in crop yield.

I am authorized to state that Justice Fosheim joins in this concurrence in part and dissent in part.

---

1. I note, without necessarily endorsing, the wry observation of Professors White and Summers concerning cases of this nature:

> In light of the cases decided thus far, we suspect that whenever a consumer's blood is spilled, even wild horses could not stop a sympathetic court from plowing through the most artfully drafted and conspicuously printed disclaimer clause in order to grant relief.

J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code 485 (2d ed. 1980).