Roger D. McKELLIPS, Plaintiff
and Appellant,

v.

Donald P. MACKINTOSH, Brevet Inter-
national, Inc., and Dakota Industries,
Inc., Defendants and Appellees.

No. 17245.

Supreme Court of South Dakota.

Argued Feb. 13, 1991.

Decided Sept. 25, 1991.

Robert E. Hayes of Davenport, Evans, Hurwitz & Smith, Patrick T. Dougherty of Dougherty & Dougherty, Sioux Falls, for plaintiff and appellant.

Donald N. Srstka, William H. Heuermann, Sioux Falls, for defendants and appellees.

YOUNG, Circuit Judge.

Roger D. McKellips (McKellips) appeals from an order granting summary judgment in favor of Donald P. Mackintosh (Mackintosh), Gary Lamberty (Lamberty), Brevet International, Inc. (Brevet), and Dakota Industries, Inc. (Dakota). The circuit court granted summary judgment stating that "Plaintiff's [McKellips] claims against the Defendants are void and against public policy."

### FACTS

On June 11, 1986, Mackintosh and Lamberty, both officers of Dakota, made a formal presentation to the State Bank of Al-

cester for an operating loan of $15,000 for Dakota. McKellips, acting on behalf of the bank, rejected the request. During this meeting, Mackintosh and McKellips discussed the potential trademark infringement claim that Dakota had against M. Fine & Sons, a New York corporation.

On June 13, 1986, McKellips telephoned Mackintosh and indicated that he might be willing to "personally" loan some money to Mackintosh in exchange for a portion of the action against M. Fine & Sons. McKellips asked how much money was necessary to get the trademark case started. Mackintosh told him that $3,000 was needed before the Chicago lawyers would proceed with the Dakota case. McKellips said he would personally loan Mackintosh $3,000 in exchange for a percentage of any award or settlement accruing at one percent per month. In the event that no award or settlement was forthcoming, McKellips would receive the principal plus 14 percent interest.

Mackintosh prepared an agreement which he and Lamberty signed and mailed to McKellips. The agreement * provided:

This agreement is between Roger McKellips of Alcester, South Dakota, Hereinafter called the Party of the First Part, and Donald P. Mackintosh of Sioux Falls, South Dakota and Gary Lamberty of Sioux Falls South Dakota, hereinafter called the Parties of the Second Part.

1. Party of the First Part shall loan $3,000.00 to the Parties of the Second Part, bearing 14% interest.

2. Parties of the Second Part will apply this money to past due Attorney fees, air fare, travel, and time to bring forward a suit against M. Fines & Sons Inc. of New York d/b/a Five Brothers producing a brand named 'DAKOTA' in direct defiance of the Registration of this brand by Dakota Industries Inc. of Tea South Dakota.

3. Brevet International Inc. of Chicago, Illinois, (a South Dakota Corporation), has purchased all rights to the registration from Dakota Industries

Inc. Therefore all Parties acknowledge this Legal Ownership.

4. All actions will be taken through the original rights of Dakota Industries Inc.

5. Should this effort prove successful, Party of the First Part waives all interest and principal on the note in exchange for a percentage of the award and/or settlement. Said percentage to be accrued at 1% per month. In no case is the party of the First Part to receive less than the original amount plus 14% interest.

On June 17, 1986, McKellips sent his signed copy of this agreement and a negotiable promissory note, dated June 14, 1986, to Mackintosh. The note contained a blank payee and was due on December 31, 1986. Although the note was not a part of the parties' agreement, McKellips required that Mackintosh and Lamberty sign the promissory note before he would advance the $3,000. Upon receipt of the promissory note, McKellips sent his check for $3,000 to Mackintosh who in turn wrote a check to a Sioux Falls lawyer for that amount. The lawyer paid the Chicago lawyers to pursue the trademark infringement lawsuit. A lawsuit was subsequently brought on behalf of Dakota against M. Fine & Sons.

On September 21, 1987, approximately 15 months from the date of the agreement and note, McKellips sent Mackintosh a letter demanding payment on the $3,000 note. The letter stated that it had been over a year since he advanced the money to finance the lawsuit and that it appeared that there had been no favorable reaction by now. He further indicated that the principals were liable personally for the $3,000 note and demanded payment.

On April 25, 1988, the lawsuit against M. Fine & Sons was dismissed for lack of venue. In May 1988, Mackintosh mailed a post-dated check in the amount of $500 to McKellips as the first payment on the $3,000 note. On August 23, 1988, McKellips demanded finished goods from Dakota since he "would never get paid otherwise." McKellips personally loaded a trailer with

* The spelling, punctuation, and capitalization are as contained in the original document.

35 pair of insulated coveralls of different sizes and prices for the total value of $2,847.25 which was applied against the $3,000 note. The final payment in the amount of $1,000 was mailed to McKellips on January 31, 1989.

Dakota started a second lawsuit against Campbell Supply and Shopko on November 8, 1988, for trademark infringement. M. Fine & Sons was added as a party defendant on March 3, 1989.

On July 29, 1989, a settlement was reached in the lawsuit between Dakota Industries and M. Fine & Sons in the amount of $850,000 structured over four years, together with a trademark licensing agreement for an additional $375,000 in royalties.

On December 5, 1989, McKellips brought a suit against Mackintosh, Dakota, Brevet and Lamberty for 41 percent of the settlement of the trademark infringement lawsuit plus $500,000 in punitive damages.

The trial court granted summary judgment finding that the agreement between McKellips and Mackintosh violated the doctrines of champerty and maintenance and was void as against public policy. McKellips argues that the doctrines of champerty and maintenance no longer exist under South Dakota law, and further, if the doctrines exist, the agreement did not violate them.

## ISSUES

1. Do the common law doctrines of champerty and maintenance exist in South Dakota today?

2. Was this agreement void as against public policy on the common law doctrines of champerty and maintenance?

## DECISION

The trial court ruled, as a matter of law, that the motion for summary judgment filed on behalf of the defendants should be granted since, under the laws of champerty and maintenance, McKellip's claims were void as against public policy and, therefore, there was no genuine issue of material fact. Within the confines of the trial court's decision, there are no genuine issues concerning any factual matter. This court is simply called upon to determine the legal issues above stated.

The ancient doctrine of champerty was created centuries ago in England in an effort to prevent unscrupulous, uninterested litigious individuals from buying up shadowy claims to land by bringing suits against rightful owners and profiting from their annoyance and embarrassment. *See* 14 Am.Jur.2d *Champerty and Maintenance* § 1 (1964).

Maintenance was developed to prevent the assignment of choses in actions which restrained litigation thought to be conducted by powerful men who attempted to coerce indigent debtors into lawsuits. Annotation, 139 A.L.R. *Offense of barratry; criminal aspects of champerty and maintenance* 620 (1942).

The doctrines of champerty and maintenance were developed, at common law, to prohibit practices that have a "manifest tendency to [oppress]" and to "prevent officious intermeddlers from stirring up strife and contention by vexatious and speculative litigation which would disturb the peace of society, lead to corrupt practices, and prevent the remedial process of law." *Schnabel v. Taft Broadcasting Company, Inc.*, 525 S.W.2d 819, 823 (Mo.Ct.App.1975); *Hackett v. Hammel*, 185 Minn. 387, 241 N.W. 68 (1932); 14 C.J.S. *Champerty and Maintenance* § 3 (1939).

Maintenance is defined as "an officious intermeddling in a suit that in no way belongs to one, by maintaining or assisting either party with money or otherwise, to prosecute or defend it; . . . ." 14 C.J.S. *Champerty and Maintenance* § 1; *see also American Hotel Management Associates, Inc. v. Jones*, 768 F.2d 562 (4th Cir.1985); 14 Am.Jur.2d *Champerty and Maintenance* §§ 2–3. Champerty, a form of maintenance, involves an agreement under "which a person who has no interest in the suit of another undertakes to maintain or support it at his own expense in exchange for part of the litigated matter in event of a successful conclusion of the

cause." *Schnabel,* 525 S.W.2d at 823; *American Hotel,* 768 F.2d at 570.

■ In South Dakota, the rules of common law are in force, except where they conflict with the will of the sovereign power, which is expressed in the constitution, statutes and ordinances of the state. SDCL 1–1–24, 1–1–23. This court has recognized rules of common law by virtue of these statutes. *Petition of Brockmueller,* 374 N.W.2d 135, 137 (S.D.1985), we held that the common law writ of coram nobis was available in South Dakota, stating that "to the extent not supplanted under the provisions of SDCL 1–1–23, the rules of common law apply." And, in *Hunt v. Hunt,* 309 N.W.2d 818 (S.D.1981), we maintained our position that common law doctrines were not to be abolished until repealed by legislative action. Consequently, we found the common law cause of action for criminal conversion was abolished in light of legislative action; the common law tort of alienation of affections was preserved until repealed by the legislature. There are no statutes where the legislature of this state has abrogated the common law doctrines of champerty and maintenance. Rather, the criminal statute of barratry exists which prohibits the "practice of maliciously bringing or causing to be brought any groundless judicial proceedings." SDCL 22–12–1.

This court has recognized the doctrine of champerty. In *Hudson v. Sheafe,* 41 S.D. 475, 484, 171 N.W. 320, 322 (1919), we held that an assignment of a judgment to an attorney was champertous. We found that such an assignment was an "evidence of debt" made to an attorney for the sole purpose of bringing suit, and not for payment for attorney's fees or services was prohibited by statute. This court again, in *Bottum v. Herr,* 83 S.D. 542, 162 N.W.2d 880 (1968), recognized the doctrine of champerty when it had the opportunity to examine an assignment claimed to be champertous. Applying the statutes prohibiting champertous assignments, we concluded that this particular assignment was not champertous because of the nature of the assignment and the fact that it was to be applied only to the client's indebtedness to the attorney. Although the above statutes were later repealed, there was no statutory or judicial repudiation of the common law remedy of champerty; therefore, this court must hold that the doctrines of champerty and maintenance currently apply in South Dakota. *See* 1976 S.D.Sess.Laws Ch. 158 § 12–7, SDCL 22–12–1.

■ The agreement between McKellips and Mackintosh with Lamberty was clearly champertous. The parties had an agreement. McKellips had no interest or personal stake in Mackintosh's suit against M. Fine & Sons. McKellips undertook to support the suit at his own expense. The agreement provided that McKellips would loan money to Mackintosh and Lamberty to "apply to past due Attorney fees, air fare, travel and time to *bring forward a suit* [emphasis added] against M. Fines [sic] & Sons[,] Inc. of New York" on behalf of Dakota for trademark infringement. The support was in exchange for part of the litigated matter in the event of a successful conclusion of the cause. The agreement provided, that should this effort prove successful, Roger McKellips would waive "all interest and principal on the note in exchange for a percentage of the award and/or settlement." The fact that Mackintosh paid McKellips on the $3,000 he advanced is of no consequence. The agreement still contemplated that McKellips would be entitled to a share of the settlement in the event of successful litigation.

■ Having found that the common law doctrine of champerty is currently recognized in South Dakota, this court further finds that the agreement between McKellips and Mackintosh and Lamberty is champertous and void as against public policy. Since the contract is void as against public policy it is unlawful and therefore, unenforceable. SDCL 53–9–1. Since this court finds the contract is unenforceable because it is champertous, it is not necessary to inquire further as to whether this agreement provided for support which would have also violated the doctrine of maintenance. It is well settled that if there exists any basis which supports the ruling of the

trial court, affirmance of a summary judgment is proper. *Weatherwax v. Hiland Potato Chip Co.*, 372 N.W.2d 118, 120 (S.D.1985). We affirm the trial court's order.

HENDERSON, J., and HERTZ, Acting J., concur.

MILLER, C.J., and WUEST, J., concur in result.

YOUNG, C.J., for SABERS, J., disqualified.

AMUNDSON, J., not having been a member of the court at the time this action was submitted did not participate.

MILLER, Chief Justice (concurring in result).

While I do not disagree that the contract between McKellips and Mackintosh violates public policy and is therefore unenforceable (SDCL 53-9-1), I do not believe this court needs to dredge up antiquated common-law doctrines such as "champerty and maintenance" in order to make this conclusion. Modern contract law reaches the same conclusion.

This action was originally brought for breach of contract, breach of implied covenant of good faith and fair dealing, breach of fiduciary duty, conversion, fraud, constructive fraud, and constructive trust. Appellees answered, alleging that McKellips' claim was "unconscionable, illegal and void as against public policy." Certainly existing contract law could have adequately addressed McKellips' claim.

For example, SDCL 53-9-1 states: "A contract provision contrary to an express provision of law or to the policy of express law, though not expressly prohibited or otherwise contrary to good morals, is unlawful."

In *State ex rel. Meierhenry v. Spiegel, Inc.*, 277 N.W.2d 298, 300 (S.D.1979), we said: "Public policy is that principle of law which holds that no person can lawfully do that which has a tendency to be injurious to the public or against the public good."

The test is "the evil tendency of the contract, and not its actual injury to the public in a particular instance.... The law looks to the general tendency of such agreements, and it closes the doors to temptations by refusing them recognition in any of its courts." *Schurr v. Weaver*, 74 S.D. 378, 483, 53 N.W.2d 290, 293 (1952).

In *Hunt v. Hunt*, 309 N.W.2d 818, 822 (S.D.1981), we noted: "To maintain antiquated rules and methods merely for the sake of consistency is akin to secluding oneself from an often volatile world."

The precedent in South Dakota recognizing champerty and maintenance is minimal at best. *See Hudson v. Sheafe*, 41 S.D. 475, 484, 171 N.W. 320, 322 (1919); *Bottum v. Herr*, 83 S.D. 542, 162 N.W.2d 880 (1968). Moreover, the only South Dakota decisions recognizing the doctrine of champerty involve claims assigned to attorneys or interpreting a statute on grants of real property.

Based on our prior decisions, I would find that McKellips' contract with Mackintosh was contrary to public policy and as a result void.

I am authorized to state that Justice WUEST joins in this concurrence in result.