Maxine B. CASE and Judith R. Sides,
Plaintiffs and Appellants,

v.

Craig MURDOCK, Nancy Murdock, Bret
Hamm, Angel Hamm, Sandra McCro-
den, and Hickok's, Inc., a South Dakota
corporation, Defendants and Appellees.

Nos. 17558, 17581.

Supreme Court of South Dakota.

Considered on Briefs March 17, 1992.

Decided July 1, 1992.

Gregory A. Eiesland of Quinn, Eiesland, Day & Barker, Michael J. Larson of Lynn, Jackson, Shultz & Lebrun, P.C., Rapid City, for plaintiffs and appellants.

Thomas W. Stanton, William A. May, Costello, Porter, Hill, Heisterkamp & Bushnell, Rapid City, for defendants and appellees.

HENDERSON, Justice.

## PARTIES/PROCEDURAL HISTORY

For purposes of clarity and convenience, we shall refer to Maxine B. Case and Judith R. Sides, appellants, as Case and Sides; appellees' advocacy shall hereinafter be referred to as the contentions of Hickok's, Inc., and/or Hickok. Case and Sides brought suit claiming entitlement to stock shares in Hickok's, Inc., also urging that various appellees were not entitled to stock shares. Hickok's counterclaimed alleging breach of duty by Case and Sides.

A jury, having tried the issues, awarded punitive damages unto Hickok's of $10,500 each from Case and Sides but no compensatory damages.

Case and Sides filed a motion for judgment NOV; Hickok moved for a new trial on the issue of Case's stock subscription; both motions were denied. However, trial court ordered the punitive damage award stricken subject to the right of Hickok's to have a new trial on the damages claim. An Amended Judgment was filed below from whence an appeal is taken. We affirm the trial court on all issues.

### ISSUES PRESENTED BY CASE AND SIDES

I. Did the trial court err in ordering a new trial on Hickok's claim for compensatory and punitive damages?

II. Did the trial court err in denying plaintiffs' motion for judgment notwithstanding the verdict on the damages issue?

III. Did the trial court err in ruling as a matter of law that Case and Sides breached a fiduciary duty to Hickok?

IV. Did the trial court err in allowing Hickok to present the issue of punitive damages to the jury?

### ISSUES PRESENTED BY HICKOK BY NOTICE OF REVIEW

I. Did the trial court err in not granting Hickok's motion for a new trial on Maxine Case's stock subscription?

II. Did the trial court err in failing to combine the lawsuit filed by Gary Case with the instant action?

For purposes of our decision, we combine Case and Sides' Issues I and II.

### FACTS

Hickok's, Inc. is a corporation formed for the purposes of operating a gaming establishment in Deadwood, South Dakota. From the date of incorporation, the stockholders of the corporation were Case and Sides, appellees Sandra McCroden (McCroden), and Bret and Angel Hamm (Hamms). On January 12, 1990, Appellees Craig and Nancy Murdock (Murdocks) were voted in as shareholders. Case was President; Sides was Secretary of Hickok's.

In the fall of 1989, before incorporation of Hickok's, some of the parties to this suit searched and located a building to house a casino. Negotiations between Hamms, Murdocks, Sides and Gary Case with Mark Brockley (Brockley) resulted in the execution of a lease agreement on October 27, 1989, for the Brockley Building. Sides, Gary Case and Hickok's, Inc. signed this lease agreement. Initial funds required by the lease were advanced by Hamms and Sides, who were later reimbursed by Hickok's. This lease did not contain a purchase option. It did vest the lessee with a "first right of refusal" to match any offer if the building was offered for sale.

Incorporation was accomplished in mid-November, 1989. Hickok's was established with two classes of stock, A (voting) and B (non-voting). Each shareholder in Hickok's had one A stock and initially 399 shares of B stock.

After initial success in the gaming industry, the shareholders agreed that a committee be formed to approach Brockley on a proposed purchase of the Brockley Building. A committee was formed at a shareholders' meeting on March 10, 1990. The committee consisted of Case's husband—Paul Case, Side's husband—Gary Case, and Nancy Murdock. Additionally at this meeting, Gary Case and Sides asked that Hickok's release them from the lease, turning over any rights they had in the lease, in return for a hold harmless agreement.

This building committee then submitted an offer, on behalf of Hickok's, Inc., to purchase the Brockley Building for $1,350,-000. Brockley counter-offered to sell the building for an amount in the $2.0–$2.2 million range. Through further negotiation, the parties stood at an offer of $1,500,000 by Hickok's and $1,750,000 by Brockley. At this point, the shareholders adopted a strategy to let Brockley "cool his heels" and think about Hickok's offer. This tactical decision was based upon apparent financial difficulties of Brockley.

Hickok's Board of Directors called a meeting for May 8, 1990. A discussion concerning further strategy, regarding the prospective purchase of the building, was scheduled. As the meeting commenced, counsel for Case and Sides advised all parties present that Case, Sides, Paul Case and Gary Case had purchased the building on their own behalf. Essentially, this conduct spawned the present lawsuit. An Offer and Agreement to Purchase for $1,650,000 was executed on May 3, 1990, between Brockley and the four. Testimony and evidence was produced at trial that counsel for Case and Sides advised the other shareholders that the "right of first refusal" in the original lease agreement was the personal property of Sides and Gary Case. Case and Sides proposed, as an act of commercial leverage, in return for a stock reorganization of Hickok's, to transfer the Offer and Agreement to Purchase to Hickok's. Additionally, both requested that 401 shares of Hickok stock be given to Gary Case in return for transfer of their rights under the lease, i.e., right of first refusal. Using this ploy, they further requested that Class A and B stock be abolished and that all stock be redesignated as voting stock. To say the least, they were very busy in implementing a scheme to further their own private interests. Case and Sides were still operating as officers and directors of Hickok's at the time of purchasing the building and at the May 8 board of directors' meeting. The other directors and shareholders of Hickok's requested to Brockley to turn over the Purchase Agreement to Hickok's based on the right of first refusal contained in the original lease. Hickok's purchased the building for $1,650,000, for the exact price Case and Sides had purchased it.

## DECISION

**I., II.** *Did the trial court err in ordering a new trial on Hickok's claim for compensatory and punitive damages? And did it err in denying motion for judgment notwithstanding the verdict on this issue?*

Case and Sides assert that trial court erred by ordering a new trial on the dam-

ages issue. Further, Case and Sides argue that trial court erred in denying their motion for judgment notwithstanding the verdict in regard to this issue.

■ Case and Sides' motion for judgment NOV argues: Since the jury failed to find that Hickok's was entitled to compensatory damages stemming from the breach of fiduciary duty, the jury was not within their power to award punitive damages. Case and Sides based their motion for judgment NOV on SDCL 15-6-50(b) which provides, in pertinent part:

> Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion.... *If a verdict was returned the court* may allow the judgment to stand or *may reopen the judgment and either order a new trial* or direct the entry of judgment as if the requested verdict had been directed.... (emphasis added).

Case and Sides satisfied the prerequisite for a motion for judgment notwithstanding the verdict under this statute when they made a motion to strike Hickok's claim for punitive damages at the conclusion of Hickok's evidence. Nevertheless, SDCL 15-6-50(b) provides the trial court the option to reopen the judgment and order a new trial: "If a verdict was returned the court ... may reopen the judgment and either order a new trial...." SDCL 15-6-50(b). Case and Sides opened up this option to trial court when it met its prerequisite to file a motion for judgment notwithstanding the verdict by this statute.

■ Moreover, under SDCL 15-6-59(d), a trial court, on its own initiative, may order a new trial for any reason for which it might have granted a new trial on motion of a party. SDCL 15-6-59(d) provides:

> Not later than ten days after entry of judgment the court of its own initiative may order a new trial for any reason for which it might have granted a new trial on motion of a party.

Trial court based its order for a new trial on the damages issue on the premise that the jury's actions, in failing to award compensatory damages to Hickok's when awarding punitive damages was, "facially inconsistent." Striking the punitive damages award, it ordered a new trial on all damage claims. Additionally, we take note of SDCL 15-6-59(a)(6) which provides as grounds for a new trial:

. . . . .

(6) Insufficiency of the evidence to justify the verdict or other decision or that it is against law;

Trial court attributed this inconsistency in the jury's actions to be due to the likelihood of a misunderstanding by the jury of the court's instructions. It was also the opinion of the trial court that the evidence did factually establish a basis for both a compensatory and a punitive damage award. The instruction charging the jury on punitive damages states: *"In addition to any actual damages* that you may award to the Defendant, Hickok's, Inc., *you may also*, in your discretion, *award punitive damages...."* (Emphasis added). The jury failed to award compensatory damages but did award punitive damages. This action was not within the discretion and directly contravenes South Dakota law. *Speck v. Anderson*, 349 N.W.2d 49, 51 (S.D.1984).

On appellate review, an order granting a new trial will not be disturbed absent a clear showing of an abuse of discretion. *Hepper v. Triple U Enterprises, Inc.*, 388 N.W.2d 525, 530 (S.D.1986). We hold that trial court did not abuse its discretion in ordering a new trial. Trial court explicitly stated its reason for doing so. Based on SDCL 15-6-50(b), SDCL 15-6-59(d), Case and Sides' motion for judgment NOV, and the inconsistency inherent in the jury award contravening South Dakota law, the trial court was well within its discretion in ordering a new trial on the damages issue. Further, we do not believe that the trial court abused its discretion in denying Case and Sides' motion for judgment NOV. Trial court believed that there was sufficient evidence to establish a basis for both a compensatory damage award and a punitive damage award. *See*, SDCL 15-6-59(a)(6). We additionally note that trial court properly struck the punitive damages award when it ordered a new trial. *Time Out, Inc. v. Karras*, 469 N.W.2d 380, 386 (S.D.1991); *Speck*, 349 N.W.2d at 51.

III. *Did the trial court err in ruling as a matter of law that Case and Sides breached a fiduciary duty to Hickok's?*

Case and Sides admit, as directors and officers of Hickok's, Inc., they owed Hickok's and the remaining shareholders the duties of a fiduciary. They argue, however, that Hickok's abandoned a business opportunity and, in so doing, freed Case and Sides to pursue that opportunity. Hickok's requested the court at the conclusion of Case and Side's presentation and also at the conclusion of trial, that the court direct a verdict on liability for breach of fiduciary duty. Trial court granted this motion finding a breach of the duty as a matter of law and submitted that conclusion in the jury instructions.

In granting or denying a motion for a directed verdict, trial court must consider the evidence in the light most favorable to the non-moving party and give the non-moving party the benefit of every reasonable inference in his favor. *Carlson v. First Nat. Bank*, 429 N.W.2d 463, 466 (S.D. 1988). It is also permissible in exceptional cases to direct a verdict in favor of the party having the burden of proof when the evidence on behalf of the moving party is clear and full, credible and not contradicted, and is so plain and complete that reasonable minds would come to no other conclusion. *Koupal & Anton, Inc. v. Wieczorek*, 375 N.W.2d 639, 640 (S.D.1985). On review, we find that the evidence is credible and uncontradicted so that reasonable minds would come to no other conclusion.

Case and Sides admit that they were officers and directors of Hickok's, Inc., when they negotiated and purchased the building. They also admit that in such a capacity, they owed the remaining shareholders the duties of a fiduciary. We have held that corporate officers and directors

are held to a high degree of diligence and due care in the exercise of their fiduciary duties to shareholders. *Mobridge Community Industries v. Toure*, 273 N.W.2d 128, 133 (S.D.1978). Directors of a corporation occupy a fiduciary position in respect to the corporation and its shareholders, and are required to exercise the utmost good faith in all transactions touching a director's duty. *Schurr v. Weaver*, 74 S.D. 378, 384, 53 N.W.2d 290, 293 (1952). In *Schurr*, this Court held that a director of a corporation has a duty to make a full and frank disclosure of the circumstances in a deal affecting the corporation and was not to undertake such dealing without sanction of the corporation. *Schurr*, 53 N.W.2d at 293.

■ The doctrine of corporate opportunity has a long history in the law. Essentially, the doctrine holds that one who occupies a fiduciary relationship to a corporation may not acquire, in opposition to the corporation, property in which the corporation has an interest or tangible expectancy. *See, General Automotive Mfg. Co. v. Singer*, 19 Wis.2d 528, 120 N.W.2d 659 (1963); 3 *Fletcher Cyc. of Corp.*, § 861.1, p. 288 (1986). *Fletcher* states:

> If the doctrine of business opportunity is to possess any vitality, the corporation or association must be given the opportunity to decide, upon full disclosure of the pertinent facts, whether it wishes to enter into a business that is reasonably incident to its present or perspective operations. Since a director is under a duty to inform the corporation of the full circumstances of the transaction, mere disclosure of the transaction, without revealing the surrounding circumstances, is not sufficient, and it has been held that the failure to make complete disclosure constitutes constructive fraud, thereby tolling the statute of limitations.

3 *Fletcher Cyc. of Corp.*, § 861.1 p. 288 (1986).

There are exceptions to the general rule. A fiduciary of the corporation is allowed to take a business opportunity once the corporation has properly rejected the opportunity or if it is not in a position to take it. *Fletcher* at § 862. However, this exception is limited and conditioned as follows:

A director may be free to personally pursue a business opportunity if the director informs the corporation of the opportunity and the corporation for one reason or another declines to pursue it. The director must disclose the existence of the opportunity to the Board of Directors and let them decide whether the corporation will pursue or reject the opportunity. *Whether or not a valid corporate rejection occurs is contingent upon full disclosure of all material facts and circumstances, including the fiduciary's interest in personally taking the opportunity.* (Emphasis added). *See also, Schurr*, 53 N.W.2d at 293.

■ It seems clear from testimony and evidence in the record that Hickok's had not declined, rejected nor abandoned the opportunity to purchase the building. The shareholders agreed to let Brockley "cool his heels" after the counter-offer. Brockley testified that after further negotiations there was a lull in the negotiations, the negotiations "rested" in his words. He did not consider the negotiations to have ceased. Further, Hickok's did not consider the negotiation as having ceased. Indeed, the Board of Directors' meeting of May 8, 1990, had the topic of further corporate strategy with regard to acquisition of the building on its agenda. Case and Sides were aware of this fact. Corporate directors and officers are chargeable with knowledge of any matter that it is their duty to know. *Nichols v. Brady Consultants, Inc.*, 305 N.W.2d 849 (S.D.1981).

It is equally clear that Case and Sides as shareholders, directors and officers of the corporation, had not informed the remaining shareholders of Hickok's prior to the May 8 meeting of their acquisition of the building. Sides' own testimony concedes this. She was asked by counsel if she had told the other shareholders of her actions. Her reply: "I don't tell my personal business."

The evidence appears clear and uncontradicted. Case and Sides usurped a business opportunity from the corporation which it had neither rejected nor abandoned. Brockley had not permanently rejected the offer. During this entire time period, Case

and Sides were officers and directors of the corporation. It is evident that Case and Sides did breach their fiduciary duty to the corporation by these actions. Evidence presented also demonstrates that they attempted to use their acquisition of the building as leverage over the corporation in order to restructure the corporation. We hold that trial court did not err when it ordered a directed verdict on liability for breach of fiduciary duty.

### IV. Did the trial court err in allowing Hickok's to present the issue of punitive damages to the jury?

■ Case and Sides allege that the trial court erred in allowing Hickok's to present the punitive damages issue to the jury. They allege that the evidence presented at trial did not support this. The following statute deals with this issue:

> **21–1–4.1. Discovery and trial of exemplary damage claims.** In any claim alleging punitive or exemplary damages, before any discovery relating thereto may be commenced and before any such claim may be submitted to the finder of fact, the court shall find, after a hearing and based upon clear and convincing evidence, that there is a reasonable basis to believe that there has been willful, wanton or malicious conduct on the part of the party claimed against.

As we have recently stated, SDCL 21–1–4.1 requires the trial court to apply a clear and convincing evidence standard to determine, before any such claim may be submitted to discovery or to the jury, whether there is a *reasonable basis* to believe there has been a willful, wanton, or malicious conduct on the part of the party claimed against. This statute merely requires clear and convincing evidence to show a *reasonable basis.* *Flockhart v. Wyant,* 467 N.W.2d 473, 475 (S.D.1991). Thus, the proponents' burden is a preliminary, lower-order quantum of proof than must be established at trial. Such proof is a prima facie case for punitive damages. *Vreugdenhil v. First Bank of S.D.,* 467 N.W.2d 756 (S.D.1991).

■ We have recently defined what embodies malicious conduct. Actual malice is a positive state of mind, evidenced by a positive desire and intention to injure one another, actuated by hatred or ill will towards that person. Presumed malice may not, however, be motivated by hatred or ill will, but is present when a person acts willfully or wantonly to the injury of others. It implies that the act complained of was conceived in the spirit of mischief or criminal indifference to civil obligations. *Dahl v. Sittner,* 474 N.W.2d 897, 900 (S.D. 1991). A claim for presumed malice can be shown by demonstrating a disregard for the rights of others. *Flockhart,* 467 N.W.2d at 475.

■ Based upon a pretrial hearing and later testimony, trial court determined this issue should be presented to the jury. The trial court did find that Hickok's established by clear and convincing evidence that there was a reasonable basis to believe the actions of Case and Sides constituted willful, wanton or malicious conduct. The determination by the trial court that there was a reasonable basis to submit the issue of punitive damages to the jury will not be disturbed barring a clearly erroneous interpretation of the evidence. *Vreugdenhil,* 467 N.W.2d at 760. We agree in the trial court's determination and its view that a reasonable basis to indicate willful, wanton or malicious conduct by Case and Sides was established by clear and convincing evidence.

Reviewing the record, we are struck by the fact that, after breaching the fiduciary duty to the corporation in regard to the business opportunity, Case and Sides attempted to use their purchase of the building as leverage over the other shareholders to restructure and reorganize the corporation to their advantage. We conclude that clear and convincing evidence existed to form a reasonable basis to present the issue of punitive damage on this issue to the jury. Trial court was not clearly erroneous in this determination.

By Notice of Review, Hickok's raises the following issues.

### I. Did trial court commit reversible error by denying Hickok's motion for a new trial on Maxine Case's stock subscription?

We specifically note that the Stock Subscription Agreement entered into in No-

vember of 1989, substantially before the leverage manuevering of Case and Sides, entitled Case to one share of Class A stock and five hundred ninety-nine shares of Class B stock. Hickok's alleged that $40,-000 of Maxine Case's initial stock subscription was to be filled by Bret Hamm. Maxine Case allegedly transferred her right to a certain number of shares of stock from the stock subscription agreement to Bret Hamm.

After hearing the evidence presented at trial, the jury found that Case was entitled to 400 additional shares of Class B stock in Hickok's. Hickok's filed a motion for new trial asserting insufficient evidence existed to support this jury finding. Hickok's brought this motion pursuant to SDCL 15-6-59(a)(6). Trial court denied Hickok's motion for a new trial. In reviewing a trial court's order denying motion for new trial, only a clear showing of abuse of discretion by trial court will disturb this order. *Hepper*, 388 N.W.2d at 530.

 Under SDCL 15-6-59(a)(6), a verdict may and should be set aside when the jury draws from conflicting evidence inferences which reason cannot support in light of other evidentiary facts proven or is against the law. *Lewis v. Storms*, 290 N.W.2d 494, 497 (S.D.1980). There was not sufficient evidence in the record showing that the Hamms were entitled to Case's three hundred ninety-nine shares of Class B stock and one share of Class A stock by the Stock Subscription Agreement. There was no convincing evidence shown to support the contention that Case entered into an agreement with Hamm entitling Hamm to four hundred shares included in Case's stock subscription. Such a result, which Hickok's tried to effectuate, would have resulted in Case's having lost her one Class A voting share.

We hold that substantial evidence was presented to the jury to support the jury's finding that Case was entitled to four hundred additional shares of stock. This appellate body is required to view evidence and all reasonable inferences therefrom in a light most favorable to the verdict winner. *Alberts v. Mutual Serv. Cas. Ins. Co.*, 80 S.D. 303, 123 N.W.2d 96 (1963). A question of fact is for the jury. *Bogh v. Beadles*, 79 S.D. 23, 107 N.W.2d 342 (1961).

We can find no abuse of discretion by trial court in denying Hickok's motion for new trial. We affirm.

II. *Did trial court abuse its discretion in failing to combine the lawsuit filed by Gary Case with the instant action?*

 Hickok's note an action brought by Gary Case, a former employee. This suit is a claim against the corporation and certain stockholders for wrongful termination and tortious interference with an employment contract. Obviously, this claim is distinguishable from the issues of the case before us. The two claims involve separate parties and lack common identity of legal and factual issues. As required by SDCL 15-6-42(a), Gary Case's lawsuit does not involve a common question of law or fact. Accordingly, we find no abuse of discretion by trial court in denying this motion. *Independent School Dist. of City of Aberdeen v. First. Nat. Bank of Aberdeen*, 67 S.D. 100, 113, 289 N.W. 425 (1939).

We affirm the trial court in all respects.

MILLER, C.J., and WUEST, SABERS and AMUNDSON, JJ., concur.